James Patrick Shea, Esq. (SBN 405)
jshea@shea.law
Bart K. Larsen, Esq. (SBN 8538)
blarsen@shea.law
Kyle M. Wyant, Esq. (SBN 14652)
kwyant@shea.law
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone:  (702) 471-7432
Facsimile:  (702) 926-9683

Linda Bondi Morrison, Esq. (*pro hac vice forthcoming*)
lmorrison@tresslerllp.com
**TRESSLER LLP**
4 Park Plaza, Suite 1200
Irvine, California 92614
Telephone:  (949) 336-1200
Facsimile:  (949) 752-0645

Erich S. Buck, Esq. (*pro hac vice forthcoming*)
ebuck@ag-ltd.com
**ADELMAN & GETTLEMAN, LTD.**
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Telephone:  (312) 435-1050
Facsimile:  (312) 435-1059

Attorneys for Plaintiff
GREAT AMERICAN E&S INSURANCE COMPANY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>AFFINITYLIFESTYLES.COM.INC., REAL WATER, INC., and REAL WATER OF TENNESSEE, LLC,<br><br>Debtors. | Case No.: 21-14099-nmc |
| GREAT AMERICAN E&S INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>REAL WATER, INC. and AFFINITYLIFESTYLES.COM, INC.,<br><br>Defendants. | Adversary Case No.:<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND FOR DECLARATORY JUDGMENT**<br><br>**[JURY TRIAL DEMANDED]** |

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

Plaintiff, Great American E&S Insurance Company ("Great American"), by and through its attorneys, Shea Larsen PC, Tressler LLP, and Adelman & Gettleman, Ltd., and for its Complaint for Breach of Contract and Declaratory Judgment ("Complaint"), states as follows:

## I.   NATURE OF THE ACTION

1.   This action involves an insurance dispute stemming from suits against Defendants Real Water, Inc. and Affinitylifestyles.com, Inc. (collectively, "Defendants" or "Real Water") in numerous underlying actions (the "Underlying Actions"). In the Underlying Actions, the plaintiffs therein ("Underlying Claimants") alleged that they suffered injuries after consuming a product called "$Re^2al$ Alkalized Water" ("Real Water's Product").

2.   In a separate action filed in the United States District Court, District of Nevada, Great American has interpleaded the total remaining limits of its policy issued to Real Water, to allow for disbursement of the proceeds from Great American's policy to the injured claimants (some of whom have Nevada state court judgments against Real Water) in respective amounts to be determined by the District Court.[1]

3.   In this action specifically, Great American alleges breach of contract for Defendants' failure to cooperate in the defense and settlement of the Underlying Actions. Defendants have taken inconsistent and misleading positions regarding Great American's ability to use the policy limits to resolve claims against Real Water and by then asserting that Great American is now liable for amounts above the issued policy limits. These actions have damaged Great American and constitute breaches of Great American's policy.

4.   Further, Great American seeks declaratory relief in order to obtain a judicial determination of its rights and obligations under its policy, and a specific declaration that Great American has no liability beyond the policy limits.

---

[1] Suit was filed in the District Court given this Court's prior ruling that the proceeds of Great American's policy are not property of Real Water's bankruptcy estate. *See Order Denying Motions to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019 [ECF Nos. 374, 377 and 455]* entered on October 3, 2024.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

## II. PARTIES

5.    Great American is a company organized under the laws of the State of Ohio and with its principal place of business in Cincinnati, Ohio.

6.    At all times, Great American was authorized to do business in Nevada.

7.    Upon information and belief, and at all times relevant herein, Defendants are corporations organized and existing under the laws of Nevada and with their principal place of business in Las Vegas, Nevada.

## III. JURISDICTION AND VENUE

8.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves a judicial controversy between citizens of different states.

9.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334 because Defendants' property, including Great American's policy, is part of a bankruptcy estate(s) created under Title 11, Chapter 7 of the United States Bankruptcy Code (collectively and individually, the "Bankruptcy Estate").

10.    As required by Federal Rule of Bankruptcy Procedure 7008 and Local Court Rule 7008, Great American states that it does not consent to entry by the Court of final orders or judgments in this action.

11.    Venue is proper pursuant to 28 U.S.C. § 1391 and 1409 as Defendants live, operate, and/or do business in the judicial district, are subject to the Court's personal jurisdiction in this judicial district, and a substantial part of the events giving rise to the claims at issue herein occurred in this judicial district.

## IV. THE GREAT AMERICAN POLICY

12.    Subject to its terms, conditions, and exclusions, Great American issued policy no. PL2258323, effective February 4, 2018, to February 4, 2019, to Real Water in Las Vegas, Nevada (the "Policy"). Subject to its terms, conditions, and exclusions, the Policy affords commercial general liability coverage with limits in the amounts of $1,000,000 each occurrence for "bodily injury" and "property damage" and a $2,000,000 general aggregate.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

13.     A true and correct copy of the Policy is attached hereto as **Exhibit A**.  The terms, conditions, limitations, and exclusions of the Policy are incorporated by reference as if set forth in full here.

14.     The Policy was delivered to Real Water at its address in Nevada.

15.     The Policy provides, in pertinent part, that the insurance policy limits are fixed irrespective of the number of insureds; claims or "suits" brought; or persons making claims or bringing "suits".

16.     The Policy states, in pertinent part, as follows:

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement**

a.  We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

   **(1)** the amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

   **(2)** our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b.  This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** the "bodily injury" or "property damage" occurs during the policy period; and

4

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

**(3)** prior to the policy period, no insured listed under paragraph **1.** of **SECTION II - WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\* \* \*

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

\* \* \*

**3. "Bodily injury"[2]** means bodily injury, sickness, or disease sustained by a person, including death of a person.  "Bodily injury" also means mental anguish, mental injury, or shock, if directly resulting from physical injury sickness, or disease to that person.

\* \* \*

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

\* \* \*

**c.** You and any other involved insured must:

\* \* \*

---

[2] As amended by the Specialty Plus Endorsement (written on form no. ESG 3206 (Ed. 01/16)).

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

**(3)**[3] cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . .

\* \* \*

**d.** No insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\* \* \*

17.    Real Water tendered the defense of the Underlying Actions to Great American.

18.    Great American agreed to defend Real Water against certain of the Underlying Actions, pursuant to a reservation of rights.

**V.    FACTS**

*The Underlying Actions*

19.    Beginning in March 2021, numerous individuals sued Real Water alleging injury from consuming Real Water's Product.

20.    Some of these individuals alleged injuries occurring during the Policy period.

*The Bankruptcy Proceedings*

21.    On or about August 19, 2021, still in the early stages of the Underlying Actions, Real Water filed Chapter 7 Voluntary Petitions for Non-Individuals Filing for Bankruptcy in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court"), initiating the following cases: *In re Affinitylifestyles.com, Inc.*, Case No. 21-14099; *In re Real Water, Inc.*, Case No. 21-14101; and *In re Real Water of Tennessee, LLC*, No. 21-14102 (collectively and individually, the "Real Water Bankruptcy Case").

22.    Upon initiation of the Real Water Bankruptcy Case, the Underlying Actions brought by Underlying Claimants against Real Water were enjoined by operation of the automatic stay.

23.    Eager to proceed with their claims, some Underlying Claimants began negotiating with Ryan A. Anderson, the chapter 7 trustee appointed in the Real Water Bankruptcy Case (the "Trustee"), to lift the automatic stay.

---

[3] Section IV, subsections 2.c.(3) and 2.d. of the Policy are referred to herein as the "Cooperation Clause."

6

24.    In September 2021, some Underlying Claimants entered into stipulations with the Trustee which, once entered by the Bankruptcy Court, lifted the automatic stay subject to certain conditions (collectively, the "Stipulations," and each, a "Stipulation").

25.    In exchange for being allowed to proceed with their Underlying Actions, Underlying Claimants agreed that: "(a) to the extent necessary, the Debtor shall only be a nominal party to the Litigation; (b) in the event that an adverse judgment or other adjudication or determination of any liability of the Debtor is made arising out [of] the [L]itigation, the Claimants will look solely to the Debtor's insurance coverage, if any, for any recovery for their alleged claims and damages asserted in the Litigation, and shall not seek to enforce any such matter against the Debtors directly; (c) the Claimants waive any claim they may have or could assert against the Debtor in its Chapter 7, or any right to distribution in the Chapter 7 Case." *See e.g., In re Affinitylifestyles.com, Inc.*, Case No. 21-14099, ECF NO. 16, Stipulation.

26.    The Bankruptcy Court entered the Stipulations, and pursuant to their terms, the automatic stay in the applicable Underlying Actions was lifted, and the claimants proceeded with their claims.

***Plaintiff's Negotiations with the Trustee***

27.    On July 31, 2023, the Trustee contacted Great American to determine whether Great American would have an interest in purchasing back its insurance coverage under the Policy.

28.    On August 4, 2023, the Trustee emailed Great American, offering Great American a buyback of its coverage under the Policy in exchange for payment of $1 million, subject to certain conditions common to buyback actions, including Bankruptcy Court approval.

29.    Since the beginning of Great American's discussions with the Trustee, the Trustee asserted that the proceeds of Real Water's insurance policies, including the Policy, were the property of the Bankruptcy Estate.  In reliance upon that position, on or about November 21, 2023, Great American and the Trustee entered into a Settlement Agreement and General Release (the "Settlement Agreement"), wherein Great American committed to pay its $1,000,000 each occurrence limit in exchange for a general release of all claims.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

30.    On December 11, 2023, the Trustee filed a Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "9019 Settlement Motion") in the Real Water Bankruptcy Case, seeking an order from the Bankruptcy Court approving the Settlement Agreement. In the 9019 Settlement Motion, the Trustee explained that that the settlement with Great American was reasonable, fair and equitable.  In setting forth the Trustee's position that $1,000,000 was the appropriate limit for which to settle with Great American, the 9019 Settlement Motion provided a legal and factual discussion of the Trustee's analysis of the soundness of the Settlement Agreement and its determination that the $1,000,000 each occurrence limit represented an appropriate recovery. Multiple parties filed oppositions or objections to the 9019 Settlement Motion.

31.    On October 3, 2024, the Bankruptcy Court issued an order denying the 9019 Settlement Motion [ECF No. 505] (the "Order").  The Bankruptcy Court found that the proceeds of the Policy are not property of the Bankruptcy Estate:

> Bankruptcy jurisdiction is defined by 28 U.S.C. § 1334. Section 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Under 28 U.S.C. § 1334(e)(1), the bankruptcy court also has exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." In re Todd, 2015 WL 1544585, at *7 (B.A.P. 9th Cir. Apr. 7, 2015). Bankruptcy courts do not, however, " . . . have [] jurisdiction over proceedings that have no effect on the estate of the debtor." Id. (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 & n. 6 (1995)). **Here, the proposed settlements would have no effect on this administratively insolvent chapter 7 estate as there are no debtor or estate assets for the pertinent insurance policies to protect, and the proceeds of the policies which the settlement proposes to be distributed by the trustee pursuant to 11 U.S.C. § 726 are not property of the estate**. See Id. at *9. **Accordingly, the Court lacks jurisdiction to rule on the Settlement Motions.** [Emphasis Added] [Footnotes Omitted]

32.    After issuance of the Order, the Trustee terminated the Settlement Agreement.  Great American could not appeal the Order without the Trustee's cooperation.  The Trustee's termination of the Settlement Agreement marked the Trustee's abandonment of further discussions with Great American.

33.    On or about September 2, 2025, Great American filed a Complaint in Interpleader, seeking to interplead the $2 million aggregate limit of its Policy and to have the limit equitably apportioned among the claimants seeking an entitlement to same.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

*Offers of Judgment*

34.    Before the filing of Great American's Complaint in Interpleader and throughout the pendency of the Real Water Bankruptcy Case, Real Water received various offers of judgments pursuant to Nevada Rule of Civil Procedure 68.

35.    Based on the Trustee's position that the Policy proceeds were the property of the Bankruptcy Estate, Great American risked violating the automatic stay were it to pay any of the claims being asserted against Real Water, and further risked having to pay twice in the event the Bankruptcy Court approved the settlement with the Trustee.

36.    Moreover, the Trustee asserted the offers of judgment violated the Stipulations because they were an attempt "to obtain new claims against the Consolidated Debtors." The Trustee further took the position that "[b]ecause these actions violate the automatic stay, such actions are void and are of no legal effect."  [ECF No. 580-1.]

37.    As of November 2024, Real Water had received approximately fifty offers of judgment, totaling over $25 million, in connection with Underlying Claimants' bodily injury claims against Real Water, some of whom alleged injury during the Policy period.

38.    Those offers of judgment exceed the aggregate limit of Great American's Policy.

39.    After the Bankruptcy Court determined it does not have jurisdiction over the Policy proceeds, Great American could not (and cannot) issue payment for the offers of judgment without exhausting available funds under the Policy before all injured claimants' claims are satisfied. Therefore, consistent with its prior efforts to ensure an equitable distribution of limited Policy proceeds, Great American interpleaded the aggregate limit of its Policy, as set forth above.

*Judgments Entered Against Real Water*

40.    As of the date of filing this Complaint, there have been multiple claims made against Real Water by Underlying Claimants who alleged "bodily injury" during Great American's Policy period as a result of consumption of Real Water's Product, and some of these claims have resulted in verdicts entered against Real Water.  Specifically, these verdicts include: a Judgment Upon the Jury Verdict in favor of Richard Belsky (the "Belsky Judgment") against Real Water in the litigation styled *Gallagher, et al. v. Affinitylifestiles.com, Inc. d/b/a Real Water, et al.*, District Court for Clark

9

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

County, Nevada, Case No. A-21-834485-B; a Judgment Upon the Jury Verdict in favor of Ms. Miriam Brody (the "Brody Judgment") against Real Water in the litigation styled *Hunwardsen, et al. v. Affinitylifestiles.com, Inc. d/b/a Real Water, et al.*, District Court for Clark County, Nevada, Case No. A-21-831543-B; a Judgment Upon the Jury Verdict in favor of Ms. Lisa King (the "King Judgment") against Real Water in the litigation styled *King v. Real Water, Inc., et al.*, District Court of Clark County, Nevada, Case No. A-21-833-630-B; a Judgment Upon the Jury Verdict in favor of Ms. Andria Bordenave (the "Bordenave Judgment") against Real Water in the litigation styled *Bordenave v. Affinitylifestyles.com, Inc., d/b/a Real Water, et al.*, District Court of Clark County, Nevada, Case No. A-23-867240-C; and a Judgment Upon the Jury Verdict in favor of Mr. James Delmar (the "Delmar Judgment") against Real Water in the litigation styled *Chang, et al. v. Real Water, et al.*, District Court of Clark County, Nevada, Case No. A-21-832269-C.

41.     Following entry of the Belsky Judgment and Brody Judgment and the Bankruptcy Court's determination that the Policy proceeds were not property of the Bankruptcy Estate—but prior to entry of the King Judgment, the Bordenave Judgment, and the Delmar Judgment—Great American offered to pay its per occurrence limit, $1,000,000 each, in partial satisfaction of the Belsky Judgment and Brody Judgment via letters dated October 24, 2024. Great American requested payment information from Mr. Belsky and Ms. Brody at that time. Although Great American maintains its position that the underlying events constituted one occurrence, in an effort to maximize the protection afforded to its insured against the significant liability it faced, Great American offered a total of $2,000,000. Payment of the $2,000,000 total offered to Belsky and Brody would constitute payment of the full aggregate limit of the Great American Policy, which would completely exhaust the Policy regardless of the number of current or subsequent occurrences, claimants, or judgments that could be made or rendered against Real Water or any purported additional insureds.

42.     Via correspondence dated October 30, 2024, Mr. Belsky and Ms. Brody declined to provide such payment information or accept partial satisfaction of the Belsky Judgment or Brody Judgment.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

43.     Great American again requested payment information for Mr. Belsky and Ms. Brody via correspondence dated November 5, 2024.  Mr. Belsky and Ms. Brody have not responded to this correspondence.

44.     Subsequently, the King Judgment, the Bordenave Judgment, and the Delmar Judgment were entered against Real Water.

45.     As of the date of the filing of this Complaint, there have been four verdicts entered against Real Water involving Underlying Claimants who allege "bodily injury" during the Policy period.

46.     Moreover, the Underlying Actions continue to proceed to trial.

***Conduct of Real Water Employee Blain Jones***

47.     On information and belief, Blain Jones was at all relevant times a senior level employee for Real Water, served as Vice President, and was an officer of the company.  Mr. Jones was designated as and testified at a deposition as the "person most knowledgeable," NRCP Rule 30(b)(6) witness for Real Water, on January 12, 2023.  On February 23, 2023, Mr. Jones was deposed again and provided additional testimony in his individual capacity.

48.     About two months after testifying as the NRCP Rule 30(b)(6) witness for Real Water, on or about March 14, 2023, Mr. Jones filed a complaint for his own alleged injuries and damages against Real Water, asserting that Real Water should be held liable under negligence, negligence per se, breach of the implied warranty of merchantability, and various strict liability theories.

49.     The testimony provided by Mr. Jones purportedly in his individual capacity is being used by counsel for many of the Underlying Claimants against Real Water as testimony of Real Water on the basis that it is the adverse testimony of a corporate designee of Real Water, the insured. This testimony by Mr. Jones has been used by claimants against Real Water to obtain increased damages against Real Water.  This testimony by Mr. Jones, who is an insured, is a breach of the Cooperation Clause of the Policy, which specifically requires that Real Water "and any other involved insured must [] cooperate with [Great American] in the investigation or settlement of the claim or defense against the 'suit'".  Further, filing claims and pursuing damages against Real Water,

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

of which Mr. Jones was an officer during the relevant times, after providing testimony as a corporate designee of Real Water, breached the Cooperation Clause of the Policy.

**Insufficient Limits**

50. Great American was (and is) unable to accept and pay, on behalf of Real Water, each and every verdict and judgment from the various Underlying Claimants because such offers collectively exceeded the limits of the Policy, irrespective of coverage defenses.

51. While the judgments obtained by some of the claimants against Real Water are currently on appeal, the total judgments ultimately obtained against Real Water by injured claimants exceed the remaining available Policy limits.

52. Real Water and Great American have never received a settlement demand that would have resolved all claims by all applicable claimants against Real Water within the Policy's aggregate limits.

**The Purported Bad Faith Claims**

53. The Bankruptcy Court allowed Underlying Claimants who were parties to the Stipulations to proceed with their Underlying Actions on the condition that if adverse judgment(s) was entered against Real Water, monetary recovery would be limited to Real Water's "insurance coverage, if any." *See, e.g., In re Affinitylifestyles.com, Inc.*, Case No. 21-14099, ECF No. 16, Stipulation.

54. The Trustee's position, through his conduct, actions, and communications with Great American, was that Great American's Policy funds could not be distributed outside of the Real Water Bankruptcy Case.

55. The Trustee previously entered into a settlement with Great American that would have provided for an equitable distribution of the Policy proceeds to all injured claimants through the Bankruptcy Court.

56. Any claim now, on behalf of Real Water, that Great American should have paid individual offers of judgment because the Policy proceeds were not property of the Bankruptcy Estate is a reversal of the Trustee's prior position and contrary to representations made by the Trustee to, among others, Great American.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

57.     Any claim now, on behalf of Real Water, that Great American should have paid or should pay individual offers of judgment is a reversal of the Trustee's prior position, on behalf of Real Water, that the Policy proceeds were the property of the Bankruptcy Estate.

58.     By motion filed with the Bankruptcy Court on December 9, 2024, the Trustee sought to sell purported "bad faith claims" against, among others, Great American as an asset of the Bankruptcy Estate, to certain Underlying Claimants ("Purchasing Claimants").  *See* Motion to Approve the Sale of Claims Pursuant to 11 U.S.C. 363(f) [ECF No. 569] (the "Sale Motion").  The Sale Motion also alleged that "[t]he failure to accept the Offers of Judgment, as well as other events, give rise to . . . bad faith claims."  These allegations of "bad faith" in the Sale Motion appear contrary to the Trustee's prior position that the Policy proceeds were the property of the Bankruptcy Estate and therefore properly the subject of the 9019 Settlement Motion and Settlement Agreement.

59.     In turn, Purchasing Claimants intended to use these purported "bad faith" claims to support their attempt to obtain recoveries from Great American beyond the limits of the Policy in contravention of the Stipulations.

60.     Great American was never presented with an offer of settlement for all claims of applicable Underlying Claimants, including applicable Purchasing Claimants, at one time within the aggregate Policy limits.

61.     Further, the Trustee has repeatedly acknowledged the lack of bad faith claims against Great American on the record in the Real Water Bankruptcy Case.

62.     For example, during the briefing of and hearing on the 9019 Settlement Motion in 2024, the Trustee responded to assertions by certain Underlying Claimants, including Purchasing Claimants, that the 9019 Settlement Motion should be denied because, among other reasons, it failed to account for alleged "bad faith" claims Real Water allegedly possessed against its insurers, including Great American.  In particular, the Trustee stated and admitted:

       a.   "There Are No Bad-Faith Claims"[4]

       b.   ". . . Plaintiffs fail to provide evidence or legal support for their position that the Estate may pursue the Insurers for bad faith."[5]

---

[4] ECF No. 424, ¶ II.A.1.b.
[5] *Id.* at 8.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

c. "Ultimately, Plaintiffs **offer nothing which would give rise to a claim for bad faith** outside their own conclusory statements."[6]

d. "Further, the focus in bad faith is the conduct between the insurer and its insured, and Plaintiffs fail to address how any claim for bad faith would lie given the ongoing negotiations between the Estate and the Debtors' Insurers. As far as the Estate's claims against the Insurers for bad faith, the probability of success on such claims is astonishingly low given these negotiations. **Put simply, the Trustee does not believe the Estate has a claim against the Insurers for bad faith** . . ."[7]

e. "The trustee[] explain[s] at length **why he does not believe those bad faith claims are viable because they're premised on not paying out offers of judgment while the insurer was negotiating with the trustee to turn over funds to the estate**."[8]

f. ". . . the trustee **agrees there is no bad faith claim** because the insurers negotiated this settlement of 12 million or 13 — I forget what the final number is — while this process was underway."[9]

g. "With regard to the bad faith claim that's been leveled against Great American, Great American is getting a policy limit demand by one of the <u>Gallagher</u> plaintiffs, and that was tendered in the course of negotiations between Great American and the trustee. **So, again, the argument is that there is a bad faith claim which exists because the trustee was negotiating with Great American. The trustee does not believe that's a viable claim**."[10]

h. "**No one has yet explained how a bad faith claim can lie where the insurer was negotiating with the trustee for turnover of proceeds**. I think the trustee would have a very hard time maintaining a bad faith claim against the insurer that it was negotiating with."[11]

63. Despite these assertions and admissions, the Trustee entered into a purchase agreement with Purchasing Claimants pursuant to which the Trustee agreed, subject to Bankruptcy Court approval, to sell alleged bad faith claims against Great American, if any, possessed by Real Water.

64. Great American objected to the proposed sale.

---

[6] *Id.* at 9 (emphasis added).
[7] *Id.* (emphasis added).
[8] ECF No. 442, 52:10-14 (emphasis added).
[9] *Id.*, 60:4-7 (emphasis added).
[10] ECF No. 443, 13:3-10 (emphasis added).
[11] *Id.*, 43:16-20 (emphasis added).

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

65.    By order entered on July 21, 2025 [ECF No. 746], the Bankruptcy Court denied the Trustee's Sale Motion without prejudice, and by order entered on September 19, 2025 [ECF No. 833], the Bankruptcy Court denied the Trustee's motion to reconsider its original ruling on the Sale Motion.

***Improper Stipulations***

66.    By entering into the Stipulations, the Trustee and Underlying Claimants agreed that Underlying Claimants would pursue Real Water only as a nominal defendant and instead look solely to Real Water's insurance coverage to satisfy their claims against Real Water. Underlying Claimants further agreed that they would not assert a claim against the Bankruptcy Estate. Specifically, Underlying Claimants absolutely and prospectively "waive[d] any claim they may have or could assert against [Real Water] in [the Real Water Bankruptcy Case], or any right to distribution from the [the Real Water Bankruptcy Case] (the "Claim Waivers")." *See e.g.,* ECF NO. 16, Stipulation.

67.    On February 19, 2026, the Trustee filed new stipulations [ECF Nos. 910 and 911] (the "Improper Stipulations") in the Real Water Bankruptcy Case with certain of the same Underlying Claimants (the "Revoking Claimants") who had entered into the Stipulations, including the Claim Waivers.

68.    Certain Revoking Claimants who entered into the Improper Stipulations have alleged injuries within Great American's Policy period.[12]

69.    Unlike the Stipulations, however, the Improper Stipulations were intended to and/or would have the effect of, among other things, revoking the Claim Waivers and providing Revoking Claimants an opportunity to assert claims against the Bankruptcy Estate.

70.    The Improper Stipulations now allow Revoking Claimants to assert claims not satisfied through any insurance proceeds against the Bankruptcy Estate.

---

[12] These Revoking Claimants include: Trevor Abele a minor child, by and through his parents Bryan Abele and Sandra Abele; Andria Bordenave; Hunter Brown; Pamela Brown; James J. Delmar; The Estate of Milo Hurst, Tevis Hurst, in her capacity as Special Administratrix of the Estate of Milo Hurst and as heir of Milo Hurst, Sarah Callovi, as heir of Milo Hurst; Gray Maynard; Lorenzo Muniz; Cheri Rasmussen; Daniel Taylor; and Steven Wadkins.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

71. The Improper Stipulations reverse the Claim Waivers and allow Revoking Claimants to assert claims against the Bankruptcy Estate for millions of dollars, thereby enlarging and exposing the Bankruptcy Estate to greater liability.

72. By entering into the Improper Stipulations, Real Water, by and through the Trustee, has breached its obligations under the Cooperation Clause in the Policy, which requires that "[n]o insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense" without Great American's consent.  Real Water did not seek Great American's consent to enter into the Improper Stipulations and has damaged Great American because Great American may now be compelled to expend additional fees and costs to defend Real Water against claims by applicable Revoking Claimants, who will now be seeking to pursue payment in excess of the limits of the Policy proceeds on previously waived claims against the Bankruptcy Estate.

73. Great American objected to the Improper Stipulations [ECF Nos. 929 and 947], but rather than seeking to withdraw them, the Trustee defended his conduct [*see* ECF No. 934].

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract)**

74. Great American hereby re-alleges and incorporates herein all allegations in the preceding paragraphs in this Complaint.

75. In Nevada, the elements of a cause of action for breach of contract include: (1) a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.

76. The Policy is a valid contract between the parties.

77. Great American fully performed under the Policy.

78. Great American defended and is defending Real Water in the Underlying Actions.

79. Great American entered into a proposed settlement agreement with the Trustee, which would have resulted in an equitable distribution of the Policy proceeds to be distributed by the Bankruptcy Court.  The settlement agreement and amounts proposed to be paid took into account Great American's coverage defenses, but the Bankruptcy Court did not approve the settlement.

80. The Trustee has always maintained that the settlement reached between the Trustee and Great American was reasonable and entered into in good faith.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

81.    At no time after the entry of any of the Stipulations but prior to entry of the Order denying approval of the 9019 Settlement Motion did the Trustee claim Great American should have accepted individual offers of settlement or individual offers of judgment.

82.    The Policy contains a Cooperation Clause, as set forth above, which requires that the insured cooperate with Great American's investigation, settlement, and defense of any claim or suit.

83.    Based upon the Trustee's position that the Policy proceeds are property of the Bankruptcy Estate, Great American could not agree to fund offers of judgment in the Underlying Actions in violation of the automatic stay.

84.    The Trustee attempted, and may again attempt, to sell alleged bad faith claims of the Bankruptcy Estate premised, in part, on Great American's failure to pay offers of judgment served while the automatic stay was (and is) in effect.

85.    Alternatively, the Trustee may attempt to prosecute alleged bad faith claims of the Bankruptcy Estate premised, in part, on Great American not paying offers of judgment served while the automatic stay was (and is) in effect.

86.    Real Water's new assertion that Great American should have accepted individual offers of judgment outside of the Real Water Bankruptcy Case is a breach of the Cooperation Clause that prejudiced Great American.

87.    Real Water's new assertion that Great American's failure to pay individual offers of judgment outside of the Real Water Bankruptcy Case is evidence of bad faith, contrary to the position of the Trustee at the time, and is a breach of the Cooperation Clause that prejudiced Great American.

88.    The Trustee has entered into Improper Stipulations which allowed for certain Underlying Claimants to pursue payment of previously waived claims under the Stipulations, which has damaged Great American because Great American will now be compelled to expend additional fees and costs to defend Real Water against claims by certain Underlying Claimants who will now be seeking to pursue payment in excess of the limits of the Policy proceeds on previously waived claims against the Bankruptcy Estate.

17

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

89. The Trustee was obligated under the Cooperation Clause in the Policy to refrain from assuming any obligation or incurring any expense on behalf of Real Water without Great American's consent.

90. Real Water, by and through the Trustee, breached its obligations under the Policy by enlarging and exposing the Bankruptcy Estate to greater liability.

91. Further, as set forth above, Blain Jones's decision to file suit against Real Water, represented by the same counsel as certain Underlying Claimants, as a company officer of Real Water and two months after testifying as the NRCP Rule 30(b)(6) designee of the insured, represents a fundamental and irreversible breach of the Cooperation Clause of the Policy.

92. Great American has suffered severe prejudice by this conduct.

93. Great American has been and will continue to be damaged as a result of Real Water's failure to cooperate in the defense and settlement of claims, as required by the Policy.

94. Real Water's breach of the Cooperation Clause in the Policy forecloses any further liability by Great American under the Policy, including any duty to defend Real Water in the Underlying Actions.

95. As a result of the breach, Great American suffered or will suffer damages including, but not limited to:  litigation costs, attorneys' fees, and additional administrative and legal expenses tied directly to the Trustee's conduct on behalf of Real Water.

96. Great American requests that an order be issued finding that Real Water breached the terms of the Policy by failing to cooperate in the defense and settlement of the Underlying Actions and that it voluntarily assumed obligations in violation of the Cooperation Clause; finding that Great American has no further duty to defend or indemnify Real Water under the Policy as a result of Real Water's breaches; and granting such other and further relief as the Court may deem just and proper.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Relief – No Liability Beyond Policy Limits)**

97. Great American hereby re-alleges and incorporates herein all allegations in the preceding paragraphs in this Complaint.

98. There is an actual and justiciable controversy ripe for determination by this Court.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

99. Great American has no indemnity obligation beyond the Policy's limits because:

a. Great American defended Real Water in the Underlying Actions;

b. In the Stipulations, the claimants agreed to pursue only the insurance proceeds of Real Water, if any;

c. The Stipulations insulated Real Water from any legal damages from any judgments;

d. The Stipulations limited Real Water to the status of a nominal party in any further legal proceedings;

e. There was no exposure to Real Water because further legal proceedings could only determine the amount of an injured claimant's claim to insurance proceeds in proportion to other injured claimants; and

f. Great American was entitled to rely on the Trustee's position that Great American's Policy proceeds are property of the Bankruptcy Estate that should be distributed in the Real Water Bankruptcy Case.

100. Great American seeks a declaration that Great American has no indemnity obligation beyond the Policy's limits because:

a. Great American reasonably attempted to settle with the Trustee, and provide the proceeds of its Policy to the Trustee and to the Bankruptcy Court for an equitable distribution to all injured claimants;

b. Great American should not exhaust the insurance proceeds and distribute based only on the timing of offers of judgments made to Real Water and without regard to remaining injured claimants with remaining claims against Real Water;

c. After the first verdict was entered, the damages for all claimants appeared to exceed the aggregate limits of the Policy under any theory of coverage; and

d. Great American therefore should not exhaust the Policy proceeds and distribute based only on timing of judgments entered against Real Water and without regard to remaining injured claimants with remaining claims against Real Water.

19

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

101. Great American seeks a declaration Great American has no indemnity obligation beyond the Policy's limits because:

    a. Great American was entitled to rely and did rely on the Trustee's assertions that Great American could and should negotiate the Policy proceeds with the Trustee as part of the Bankruptcy Estate; and

    b. Great American was entitled to rely and did rely on the Trustee's assertion that any purported "bad faith" claims against Great American were (and are) non-existent or unsupported and untenable.

102. Great American seeks a declaration that Great American has no indemnity obligation beyond the Policy limits because:

    a. Great American never received a settlement demand within the Policy's aggregate limits that covered all claimants;

    b. Other entities also sought indemnity payments from these same Policy funds in addition to Real Water;

    c. Great American never received a settlement demand within the aggregate Policy limits that covered all applicable claimants at the same time; and

    d. It was reasonably likely that accepting individual settlement demands when received would exhaust the Policy's limits leaving individual claimants without recovery and Real Water exposed to claims for which insurance would not be available.

103. Great American seeks a declaration that Great American has no indemnity obligation beyond the Policy limits because the Trustee, as representative of the Bankruptcy Estate of Real Water, was aware of the offers of judgment made to Great American and took the position that Great American's Policy proceeds are property of the Bankruptcy Estate that should be distributed in the Real Water Bankruptcy Case.

104. Great American seeks a declaration that Great American has no indemnity obligation beyond the Policy limits because, Great American, at all times, complied with the Nevada Unfair Claims Practices Act, NRS §§ 686A.310.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

105. Great American is informed and believes that Real Water disputes whether Great American must pay indemnity beyond the aggregate Policy limits and whether Great American acted reasonably and in accordance with the terms of its Policy and Nevada law.

106. A determination is necessary and proper at this time so that Great American and Real Water may ascertain their respective rights and duties.

107. Therefore, Great American seeks a judicial determination of the parties' rights, duties, and obligations under the Policy and Nevada law, including, but not limited to, a judicial determination that Great American has no indemnity obligation beyond the Policy limits.

108. Although Great American intends to continue to defend those Underlying Actions for which it is already providing a defense, Great American seeks a judicial determination that it has no obligation to defend any new claims against Real Water that are brought as a result of the Improper Stipulations or Real Water's breach of the Cooperation Clause.

Great American requests that the Court issue a judicial declaration of the parties' rights, duties, and obligations under the Policy and Nevada law, including a judicial determination that Great American has no indemnity obligation beyond the Policy limits already interpleaded into the United States District Court, District of Nevada in a separate action. Great American further requests any and all judicial determinations that naturally flow from a ruling that Great American, at all relevant times, acted reasonably and in accordance with the terms of the Policy and Nevada law, and that the Court grant such other and further relief as it deems proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Great American prays for the following relief:

A. An order finding that Real Water breached the terms of the Policy by failing to cooperate in the defense and settlement of claims;

B. An order finding that coverage is vitiated under the Policy as a result of Real Water's failure to cooperate in the defense and settlement of the Underlying Actions;

C. A judicial declaration that Great American has no indemnity obligation beyond the Policy limits already interpleaded into the United States District Court, District of Nevada, Case No. 2:25-cv-01638, based on this Court's determination of Nevada law;

21

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

D.    Damages resulting from Real Water's breach of the Cooperation Clause in the Policy;

E.    A judicial declaration of the parties' rights, duties, and obligations under the Policy and Nevada law; and

F.    Other such and further relief as the Court may deem just and proper.

Dated: June 22, 2026

**SHEA LARSEN**

By:    /s/ Bart K. Larsen
James Patrick Shea, Esq. (SBN 405)
jshea@shea.law
Bart K. Larsen, Esq. (SBN 8538)
blarsen@shea.law
Kyle M. Wyant, Esq. (SBN 14652)
kwyant@shea.law
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone:  (702) 471-7432
Facsimile:  (702) 926-9683

Linda Bondi Morrison, Esq. (*pro hac vice forthcoming*)
lmorrison@tresslerllp.com
**TRESSLER LLP**
4 Park Plaza, Suite 1200
Irvine, California 92614
Telephone:  (949) 336-1200
Facsimile:  (949) 752-0645

Erich S. Buck, Esq. (*pro hac vice forthcoming*)
ebuck@ag-ltd.com
**ADELMAN & GETTLEMAN, LTD.**
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Telephone:  (312) 435-1050
Facsimile:  (312) 435-1059

Attorneys for GREAT AMERICAN E&S
INSURANCE COMPANY

22
COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

**CERTIFICATE OF SERVICE**

1.  On June 22, 2026 I served the following document(s): **COMPLAINT FOR BREACH OF CONTRACT AND FOR DECLARATORY JUDGMENT**

2.  I served the above document(s) by the following means to the persons as listed below:

☒  a.   ECF System:  On all parties requesting notice

☐  b.   United States mail, postage fully prepaid:

☐  c.   Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐   For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐   For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐  d.   By direct email (as opposed to through the ECF System):

Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐  e.   By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐  f.   By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 22, 2026.

By: /s/ *Bart K. Larsen, Esq,*

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT

## **EXHIBIT 1**

Great American E&S Insurance Company

IL 70 02 (Ed. 10/07)

**Policy No.**  PL2258323

**Effective Date of Change**  02/04/18

## POLICY CHANGES

| | |
|---|---|
| **NAMED INSURED AND ADDRESS:** Real Water, Inc.<br>DBA: Affinitylifestyles.com, Inc<br>3208 W Desert Inn Rd<br>Las Vegas, NV 89102-8419 | **THIS ENDORSEMENT CHANGES THE POLICY.**<br><br>**PLEASE READ IT CAREFULLY.** |

| **POLICY ALTERNATE MAILING ADDRESS:** | **AGENT'S NAME AND ADDRESS:**<br>tKg Wholesale Brokerage, Inc<br>7340 SW Hunziker Road<br>Suite 215<br>Portland, OR 97223 |
|---|---|

Insurance is afforded by the Company named below, a Capital Stock Corporation:
Great American E&S Insurance Company

**POLICY PERIOD:** From   02/04/2018          To    02/04/2019

12:01 A.M. Standard Time at the address of the Named Insured

Endorsement #1

In consideration of no change in premium, the following change is made to your policy:

  DBA: Affinitylifestyles.com, Inc. is added as Named Insured.

**FORMS AND ENDORSEMENTS** hereby added :

**FORMS AND ENDORSEMENTS** hereby amended:

**FORMS AND ENDORSEMENTS** hereby deleted :

IL 70 02 (Ed. 10/07)                              (Page 1 of 1)

AES 3061 (Ed. 12/05)

**Policy No.**   PL2258323
**Renewal Of**  NEW

## POLICY COMMON DECLARATIONS

| | |
|---|---|
| **NAMED INSURED** | Real Water, Inc. |
| **AND ADDRESS:** | 3208 W Desert Inn Rd<br>Las Vegas, NV 89102-8419 |

| | |
|---|---|
| **IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.** | **AGENT'S NAME AND ADDRESS:**<br>tKg Wholesale Brokerage, Inc<br>7340 SW Hunziker Road<br>Suite 215<br>Portland, OR 97223 |

Insurance is afforded by the Company named below, a Capital Stock Corporation:

Great American E&S Insurance Company

**POLICY PERIOD:** From 02/04/2018 To 02/04/2019

12:01 A.M. Standard Time at the address of the Named Insured

This Policy consists of the following Coverage Parts for which a premium is indicated. This premium may be subject to adjustment.

| | Premium |
|---|---|
| Commercial Property | $ |
| Commercial General Liability | $ |
| Commercial Crime | $ |
| Commercial Inland Marine | $ |
| Commercial Boiler and Machinery | $ |
| Commercial Auto | $ |
| Commercial Umbrella | $ |
| **TOTAL** | $ |

| | |
|---|---|
| **FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this Policy at time of issue are listed on the attached Forms and Endorsements Schedule IL 88 01 (11/85). | **POLICY ALTERNATE MAILING ADDRESS:** |

**NOTICE - See enclosed endorsement for "Surplus Lines Notification"**

AES 3061 (Ed. 12/05)                                    (Page 1 of 1)

IL 88 01 (Ed. 11/85)

# FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are attached to and are a part of this policy:

| | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 1 | CG7400 11/85 | NV | | Declarations Page-General Liability Coverage Part |
| 2 | CG0001 04/13 | NV | | Commercial General Liability Coverage Form |
| 3 | AES3004 05/01 | NV | | Amendment-Premium Audit Condition |
| 4 | IL0017 11/98 | NV | | Common Policy Conditions |
| 5 | ESM3005 10/15 | NV | | Common Policy Conditions Amendment |
| 6 | AES3013 04/11 | NV | | Deductible Liability Insurance |
| 7 | ESG3206 01/16 | NV | | Specialty Plus Endorsement |
| 8 | CG0436 04/13 | NV | | Limited Product Withdrawal Expense Endorsement |
| 9 | AES3012 08/11 | NV | | General Service of Suit Endorsement (Not Applicable in Delaware or Pennsylvania) |
| 10 | IL7268 09/09 | NV | | In Witness Clause |
| 11 | CG2028 04/13 | NV | | Additional Insured - Lessor of Leased Equipment |
| 12 | IL7324 08/12 | NV | | Economic and Trade Sanctions Clause |
| 13 | CG2107 05/14 | NV | | Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - Limited Bodily Injury Exception Not Included |
| 14 | CG8383 08/14 | NV | | Exclusion - Influenza A Virus |
| 15 | CG8481 08/14 | NV | | Exclusion - Organic Pathogens |
| 16 | CG9029 05/16 | NV | | Exclusion of Claims and Suits Alleging infringement of Intellectual Property or Unfair Competition |
| 17 | ESG1010 08/16 | NV | | Exclusion-Aircraft Products and Grounding Liability |
| 18 | IL7069 03/16 | NV | | Exclusion-Asbestos |
| 19 | ESG3216 05/15 | NV | | Exclusion-Bisphenol A (BPA) And Phthalates |
| 20 | ESG3229 06/15 | NV | | Exclusion-Employer's Liability |
| 21 | CG2147 12/07 | NV | | Exclusion-Employment-Related Practices |
| 22 | CG7794 07/98 | NV | | Exclusion-Liability Arising Out of Lead |
| 23 | ESG1007 06/15 | NV | | Exclusion-Metal Gas, Fume and Metal By-Product |
| 24 | IL0021 09/08 | NV | | Exclusion-Nuclear Energy Liability Exclusion (Broad Form) |

IL 88 01 (Ed. 11/85)                    (Page 1 of 2)

| | Form and Edition | ST | Date Added* or Date Deleted | Form Description |
|---|---|---|---|---|
| 25 | CG8366 06/05 | NV | | Exclusion-Nuclear, Biological, or Chemical |
| 26 | ESG1005 04/15 | NV | | Exclusion-Pharmaceuticals and Supplements |
| 27 | ESG1001 09/13 | NV | | Exclusion-Pre-Existing Damage |
| 28 | ESG3077 11/16 | NV | | Exclusion-Professional Liability Errors and Omissions |
| 29 | CG8361 02/05 | NV | | Exclusion-Silica or Related Dust |
| 30 | CG2149 09/99 | NV | | Exclusion-Total Pollution |
| 31 | ESG1011 09/16 | NV | | Exclusion-Unmanned Aircraft Personal and Advertising Injury Liability |
| 32 | IL7210 01/15 | NV | | Disclosure Pursuant to Terrorism Risk Insurance Act |
| 33 | CG2175 01/15 | NV | | Exclusion-Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |

* If not at inception

IL 88 01 (Ed. 11/85)                              (Page 2 of 2)

Great American E&S Insurance Company

CG 74 00 (Ed. 11/85)

**Policy No.** PL2258323

## GENERAL LIABILITY COVERAGE PART
## DECLARATIONS PAGE

| NAMED INSURED: Real Water, Inc. | POLICY PERIOD: 02/04/2018 to 02/04/2019 |
|---|---|

**LIMITS OF INSURANCE:**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | |
| Products - Completed Operations Aggregate Limit | $ | |
| Personal and Advertising Injury Limit | $ | |
| Each Occurrence Limit | $ | |
| Fire Damage Limit | $ | Any One Fire |
| Medical Expense Limit | $ | Any One Person |

**RETROACTIVE DATE (CG 00 02 ONLY):** Coverage A of this Insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:  None (enter date or "none" if does not apply)

**DESCRIPTION OF BUSINESS:**

Form of Business:      (  ) Individual        (  ) Joint Venture        (  ) Partnership

( X ) Organization    (Other than Partnership or Joint Venture)

Business Description:

Bottling water

Location of All Premises You Own, Rent or Occupy:

**PREMIUM:**

| Classification | Code No. | Premium Basis * | Rates | | Advance Premium | |
|---|---|---|---|---|---|---|
| | | | Pr/Co | All Other | Pr/Co | All Other |
| Beverage Distributor | 10141 | ■ | ■ | ■ | ■ | ■ |

\*   (a) Admissions; (b) Area; (c) Each; (d) Gross Sales; (e) Payroll; (f) Total Cost;
   (g) Units; (h) Other

**Total Advance Premium** ■

Premium shown is payable:   ■   at inception;
   $

**FORMS AND ENDORSEMENTS** applicable to all Coverage Parts and made part of this policy at time of issue are listed on the attached Forms and Endorsements Schedule CG 88 01 (11/85).

CG 74 00 (Ed. 11/85)                    (Page 1 of 1)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a named insured under this Policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

**SECTION I - COVERAGES**

**Coverage A - Bodily Injury and Property Damage Liability**

**1. Insuring Agreement**

**a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** the amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** the "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** the "bodily injury" or "property damage" occurs during the policy period; and

**(3)** prior to the policy period, no insured listed under paragraph **1.** of **SECTION II - WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under paragraph **1.** of **SECTION II - WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph **1.** of **SEC-**

Copyright, ISO Properties, Inc., 2012
(Page 1 of 20)

TION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the Insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** that the Insured would have in the absence of the contract or agreement; or

**(2)** assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," rea-

sonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

**(a)** liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** causing or contributing to the intoxication of any person;

**(2)** the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** the supervision, hiring, employment, training or monitoring of others by that Insured; or

**(b)** providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage," involved that which is described in paragraph **(1)**, **(2)** or **(3)** above.

Copyright, ISO Properties, Inc., 2012

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation and Similar Laws**

Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** an "employee" of the Insured arising out of and in the course of:

    **(a)** employment by the Insured; or

    **(b)** performing duties related to the conduct of the Insured's business; or

**(2)** the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies whether the Insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the Insured under an "insured contract."

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    **(i)** "bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    **(ii)** "bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that Additional Insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that Additional Insured; or

    **(iii)** "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** at or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    **(i)** any insured; or

(ii) any person or organization for whom you may be legally responsible; or

(d) at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire."

(e) at or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

(2) Any loss, cost or expense arising out of any:

(a) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the Insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any air-

Great American E&S Insurance Company

craft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

 (1) a watercraft while ashore on premises you own or rent;

 (2) a watercraft you do not own that is:

   (a) less than 26 feet long; and

   (b) not being used to carry persons or property for a charge;

 (3) parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the Insured;

 (4) liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

 (5) "bodily injury" or "property damage" arising out of:

   (a) the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   (b) the operation of any of the machinery or equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment."

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

 (1) the transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

 (2) the use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage," however caused, arising, directly or indirectly, out of:

 (1) war, including undeclared or civil war;

 (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

 (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage to Property**

"Property damage" to:

 (1) property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

 (2) premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

 (3) property loaned to you;

 (4) personal property in the care, custody or control of the Insured;

Copyright, ISO Properties, Inc., 2012

**(5)** that particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate Limit of Insurance applies to Damage to Premises Rented to You as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "your product";

**(2)** "your work"; or

**(3)** "impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury."

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

Great American E&S Insurance Company

However, this exclusion does not apply to liability for damages because of "bodily injury."

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

 **(1)** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

 **(2)** the CAN-SPAM Act of 2003, including any amendment of or addition to such law;

 **(3)** the Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

 **(4)** any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in **SECTION III - LIMITS OF INSURANCE**.

**Coverage B - Personal and Advertising Injury Liability**

 **1. Insuring Agreement**

  **a.** We will pay those sums that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the Insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   **(1)** the amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

   **(2)** our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

  No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

  **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

 **2. Exclusions**

  This insurance does not apply to:

  **a. Knowing Violation of Rights of Another**

   "Personal and advertising injury" caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

Copyright, ISO Properties, Inc., 2012

Great American E&S Insurance Company

**b. Material Published with Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the Insured with knowledge of its falsity.

**c. Material Published Prior to Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the Insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the Insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the Insured would have in the absence of the contract or agreement.

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

**g. Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement."

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

**j. Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** advertising, broadcasting, publishing or telecasting;

**(2)** designing or determining content of web sites for others; or

**(3)** an Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the **Definitions** section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chat Rooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chat room or bulletin board the Insured hosts, owns, or over which the Insured exercises control.

**l. Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain

Copyright, ISO Properties, Inc., 2012

name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-related**

Any loss, cost or expense arising out of any:

(1) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

o. **War**

"Personal and advertising injury," however caused, arising, directly or indirectly, out of:

(1) war, including undeclared or civil war;

(2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

p. **Recording and Distribution of Material or Information in Violation of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) the CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) the Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**Coverage C - Medical Payments**

1. **Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) on premises you own or rent;

(2) on ways next to premises you own or rent; or

(3) because of your operations;

provided that:

(a) the accident takes place in the "coverage territory" and during the policy period;

(b) the expenses are incurred and reported to us within one year of the date of the accident; and

(c) the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

(1) first aid administered at the time of an accident;

(2) necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) necessary ambulance, hospital, professional nursing and funeral services.

## 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers."

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard."

g. **Coverage A Exclusions**

Excluded under Coverage **A**.

### Supplementary Payments - Coverages A and B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the Insured in the "suit." However, these payments do not include attorneys' fees or attorneys' expenses taxed against the Insured.

f. Prejudgment interest awarded against the Insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the Insured is also named as a party to the "suit," we will defend that indemnitee if all of the following conditions are met:

**a.** the "suit" against the indemnitee seeks damages for which the Insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** this insurance applies to such liability assumed by the Insured;

**c.** the obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the Insured in the same "insured contract";

**d.** the allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the Insured and the interests of the indemnitee;

**e.** the indemnitee and the Insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the Insured and the indemnitee; and

**f.** the indemnitee:

**(1)** Agrees in writing to:

**(a)** cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** notify any other insurer whose coverage is available to the indemnitee; and

**(d)** cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** obtain records and other information related to the "suit"; and

**(b)** conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph **2.b.(2)** of **SECTION I - COVERAGE A - Bodily Injury and Property Damage Liability**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** to you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** to the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph **(1)(a)** above;

**(c)** for which there is any obligation to share damages with or repay someone else who must pay

damages because of the injury described in paragraph **(1)(a)** or **(b)** above; or

**(d)** arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** owned, occupied or used by;

**(b)** rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** with respect to liability arising out of the maintenance or use of that property; and

**(2)** until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a named insured if there is no other similar insurance available to that organization. However:

**a.** coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Copyright, ISO Properties, Inc., 2012

CG 00 01 (Ed. 04/13)                                    (Page 12 of 20)

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. insureds;

   b. claims made or "suits" brought; or

   c. persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. medical expenses under Coverage **C**;

   b. damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. damages under Coverage **A**; and

   b. medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to paragraph **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the Insured or of the Insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties in the Event of Occurrence, Offense, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) how, when and where the "occurrence" or offense took place;

**(2)** the names and addresses of any injured persons and witnesses; and

**(3)** the nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** immediately record the specifics of the claim or "suit" and the date received; and

**(2)** notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** authorize us to obtain records and other information;

**(3)** cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** to join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** to sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the Insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the Insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** that is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** that is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** if the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion **g.** of **SECTION I - COVERAGE A - Bodily Injury and Property Damage Liability**.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the Insured against any "suit" if any other insurer has a duty to defend the Insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this **Excess Insurance** Provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this Policy, you agree:

**a.** the statements in the Declarations are accurate and complete;

**b.** those statements are based upon representations you made to us; and

**c.** we have issued this Policy in reliance upon your representations.

**7. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Copyright, ISO Properties, Inc., 2012

a. as if each named insured were the only named insured; and

b. separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer of Rights of Recovery Against Others to Us**

If the Insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The Insured must do nothing after loss to impair them. At our request, the Insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. **"Auto"** means:

   a. a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

3. **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. **"Coverage territory"** means:

   a. the United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. international waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in paragraph **a.** above; or

   c. all other parts of the world if the injury or damage arises out of:

      **(1)** goods or products made or sold by you in the territory described in paragraph **a.** above;

      **(2)** the activities of a person whose home is in the territory described in paragraph **a.** above, but is away for a short time on your business; or

      **(3)** "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

   provided the Insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in paragraph **a.** above or in a settlement we agree to.

5. **"Employee"** includes a "leased worker". "Employee" does not include a "temporary worker".

6. **"Executive officer"** means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. **"Hostile fire"** means one which becomes un-controllable or breaks out from where it was intended to be.

8. **"Impaired property"** means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. it incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. you have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. **"Insured contract"** means:

   a. a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. a sidetrack agreement;

   c. any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. an elevator maintenance agreement;

   f. that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** that indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   **(2)** that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** under which the Insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the Insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. **"Leased worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. **"Loading or unloading"** means the handling of property:

   a. after it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. while it is in or on an aircraft, watercraft or "auto"; or

   c. while it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

Copyright, ISO Properties, Inc., 2012

Great American E&S Insurance Company

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. **"Mobile equipment"** means any of the following types of land vehicles, including any attached machinery or equipment:

 **a.** bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

 **b.** vehicles maintained for use solely on or next to premises you own or rent;

 **c.** vehicles that travel on crawler treads;

 **d.** vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

  **(1)** power cranes, shovels, loaders, diggers or drills; or

  **(2)** road construction or resurfacing equipment such as graders, scrapers or rollers;

 **e.** vehicles not described in paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

  **(1)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

  **(2)** cherry pickers and similar devices used to raise or lower workers;

 **f.** vehicles not described in paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

  However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

 **(1)** equipment designed primarily for:

   **(a)** snow removal;

   **(b)** road maintenance, but not construction or resurfacing; or

   **(c)** street cleaning;

 **(2)** cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

 **(3)** air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. **"Personal and advertising injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

 **a.** false arrest, detention or imprisonment;

 **b.** malicious prosecution;

 **c.** the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 **d.** oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. oral or written publication, in any manner, of material that violates a person's right of privacy;

f. the use of another's advertising idea in your "advertisement"; or

g. infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. **"Products-completed operations hazard"**:

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) products that are still in your physical possession; or

(2) work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) the transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) the existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. **"Property damage"** means:

a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. **"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. an arbitration proceeding in which such damages are claimed and to which the Insured must submit or does submit with our consent; or

**b.** any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

19. **"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. **"Volunteer worker"** means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. **"Your product"**:

 **a.** Means:

   **(1)** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     **(a)** you;

     **(b)** others trading under your name; or

     **(c)** a person or organization whose business or assets you have acquired; and

   **(2)** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 **b.** Includes:

   **(1)** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)** the providing of or failure to provide warnings or instructions.

 **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. **"Your work"**:

 **a.** Means:

   **(1)** work or operations performed by you or on your behalf; and

   **(2)** materials, parts or equipment furnished in connection with such work or operations.

 **b.** Includes:

   **(1)** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **(2)** the providing of or failure to provide warnings or instructions.

Copyright, ISO Properties, Inc., 2012

Great American E&S Insurance Company

**AES 3004**
(Ed. 05 01)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMIUM AUDIT CONDITION AMENDMENT

Condition **5.,** Premium Audit (Section **IV** ) is replaced by the following:

**5. Premium Audit, Minimum Premium - Minimum Retained Premium**

**a.** We will compute all premiums for this Coverage Form in accordance with the terms and conditions of this policy.

**b.** Premium shown in this policy as Advance Premium is a deposit premium. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable upon notice to the first Named Insured. If the sum of the Advance and Audit Premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured, subject to the minimum and minimum retained premiums described below.

**c.** In no event will the final premium retained by us be less than the minimum premium shown in the Declarations of this policy. If no other premium is designated specifically as a minimum premium. Such minimum premium, the Advance Premium shown in the Declarations is the minimum premium. Such minimum premium is subject to the short rate or prorate adjustment according to policy provisions in case of cancellation of the policy.

**d.** This policy is also subject to a minimum retained premium of 25% of the Advance Premium shown in the Declarations of this policy. Such minimum retained premium is not subject to prorate or short rate adjustment in the event of cancellation by you and we shall retain no less than the minimum retained premium regardless of the policy term. Cancellation of the policy for non-payment of premium shall be deemed a request by you for cancellation of this policy thereby invoking the minimum retained premium, unless the short rate calculation earns more than the minimum retained premium.

**e.** The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

AES 3004 (Ed. 05/01) XS

**IL 00 17**
(Ed. 11 98)

## COMMON POLICY CONDITIONS

All Coverage Parts included in this Policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this Policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This Policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**C. Examination of Your Books and Records**

We may examine and audit your books and records as they relate to this Policy at any time during the policy period and up to three years afterward.

**D. Inspections and Surveys**

1. We have the right to:

    a. make inspections and surveys at any time;

    b. give you reports on the conditions we find; and

    c. recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. are safe or healthful; or

    b. comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

Copyright, ISO Properties, Inc., 1998

IL 00 17 (Ed. 11/98) XS                  (Page 1 of 2)

**E. Premiums**

The first Named Insured shown in the Declarations:

**1.** is responsible for the payment of all premiums; and

**2.** will be the payee for any return premiums we pay.

**F. Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this Policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, ISO Properties, Inc., 1998

IL 00 17 (Ed. 11/98) XS                    (Page 2 of 2)

ESM 3005 (Ed. 10/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMMON POLICY CONDITIONS AMENDMENT**

The following Conditions are added to the **COMMON POLICY CONDITIONS** of this policy.

**G. Fraud and Misrepresentation**

a. This Policy was issued based on the information supplied on an application and other correspondence including your claim or loss history. This information is considered to be part of this Policy.

b. You should review this information carefully as the truth of this information was of paramount importance in influencing our decision to issue this Policy.

c. You, for all the Insureds under this Policy, do warrant the truth of such information to the best of your knowledge at the inception date of this Policy.

d. If such information is false or misleading, it may cause denial of coverage or voiding of the Policy.

**H. Premium Financing/Cancellation of Financed Policy**

a. When we receive notification that the premium for this policy has been advanced by a premium financed company, we will acknowledge receipt of the premium finance agreement to the finance company on our form, when requested, but we will not amend or extend this Policy.

b. When we otherwise become aware that you financed all or part of this Policy's premium, regardless of whether or not we receive a notice of premium financing, we will not be bound, as respects coverage we provide, by the terms of your finance agreement. This Policy alone governs coverage.

c. When you sign a premium finance agreement, by the terms of the agreement, you may be giving the premium finance company the right, under certain conditions, to cancel this Policy on your behalf. When we receive notice of cancellation from the finance company, we will recognize their request for termination of this insurance and we will pay any return premium due as directed by the premium finance company. The return premium will be calculated on a pro-rata basis.

d. The premium finance company will usually require that payment of any return premium be made directly to them and we will honor that request. If the requested termination date set by the premium finance company conflicts with other policy provisions or the operation of law, we will comply with the policy provision and/or applicable law. You must resolve any resulting premium differences directly with the finance company.

e. The twenty-five percent (25%) minimum retained premium described in **A. Cancellation** may not be financed as it is not refundable.

**This endorsement does not change any other provision of the policy.**

ESM 3005 (Ed. 10/15)

AES 3013 (Ed. 04/11)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

### Schedule

| DEDUCTIBLE AMOUNT AND COVERAGE | DEDUCTIBLE BASIS |
|---|---|
| $   Bodily Injury Liability | (   X   ) per claim |
| $   Personal and Advertising Injury | (      ) per occurrence |
| $   Property Damage Liability | Applicable to the sum of damages, Supplementary Payments and defense costs |
| $   ■■■■  Bodily Injury and Property Damage Liability | |
| $   ■■■■  Bodily Injury, Personal and Advertising Injury and Property Damage Liability combined | |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

## APPLICATION OF ENDORSEMENT

(Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "personal and advertising injury," and "property damage," however caused):

1.  Our obligation under Bodily Injury Liability, Personal and Advertising Injury and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

2.  The deductible applies for the deductible amount and coverage option and on the deductible basis indicated in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

    a.  **PER CLAIM BASIS** - If the deductible amount indicated in the Schedule is on a "per claim" basis, that deductible applies as follows:

        (1)  Under the Bodily Injury Liability, Personal and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

            (a)  to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" sustained by any one person;

AES 3013 (Ed. 04/11)                    (Page 1 of 3)

**(b)** to the sum of damages, supplementary payments and "defense costs" because of "personal and advertising injury" sustained by any one person; or

**(c)** to the sum of damages, supplementary payments and "defense costs" because of "property damage" sustained by any one person;

**(2)** under Bodily Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury" and "property damage" sustained by any one person; or

**(3)** under Bodily Injury, Personal and Advertising Injury and/or Property Damage Liability Coverage combined to the sum of damages, supplementary payments and "defense costs" because of "bodily injury," "personal and advertising injury" and "property damage" sustained by any one person as a result of any one "occurrence" or offense.

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "personal and advertising injury" and "property damage," person includes organization.

**b.** **PER OCCURRENCE BASIS** - If the deductible amount indicated in the Schedule is on a per "occurrence" basis, that deductible applies as follows:

**(1)** under the Bodily Injury Liability Personal and Advertising Injury Liability or Property Damage Liability Coverage, respectively:

**(a)** to the sum of damages, supplementary payments and "defense costs" because of "bodily injury";

**(b)** to the sum of damages, supplementary payments and "defense costs" because of "personal and advertising injury"; or

**(c)** to the sum of damages, supplementary payments and "defense costs" because "property damage";

**(2)** under Bodily Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of all "bodily injury" and "property damage"; or

**(3)** under Bodily Injury, Personal and Advertising Injury and/or Property Damage Liability Coverage combined, to the sum of damages, supplementary payments and "defense costs" because of "bodily injury," "personal and advertising injury" and "property damage" as a result of any one "occurrence" or offense, regardless of the number of persons or organizations who sustain damages because of that "occurrence" or offense.

3. The terms of this insurance, including those with respect to:

**(a)** our right and duty to defend any "suits" seeking those damages; and

**(b)** your duties in the event of an "occurrence," offense, claim or "suit"

apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount that has been paid by us.

5. The deductible applies whether or not a payment for damages is made.

6. "Defense Costs" mean all expenses incurred in the investigation, defense and settlement of any claim or "suit" under

AES 3013 (Ed. 04/11)                                    (Page 2 of 3)

this policy including attorneys fees, court reporter fees, charges for independent medical examinations and expert witnesses, provided such claim expense is incurred by us or with our prior written permission. "Defense Costs" will not include salaried employees, counsel on retainer and office expense of either you or us.

Great American E&S Insurance Company

ESG 3206 (Ed. 01/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SPECIALTY PLUS ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This is a summary of the various additional coverages and coverage modifications provided by this endorsement. For complete details on specific coverages, consult the Policy wording.

| Coverage | Limit of Insurance | Page |
|---|---|---|
| Non-Owned Aircraft | | 2 |
| Non-Owned Watercraft | | 2 |
| Medical Payments Increased Limits | | 3 |
| Who Is An Insured: Broadened Named Insured | | 3 |
| Who Is An Insured: Fellow Employee | | 3 |
| Who Is An Insured: Newly Formed or Acquired Organizations | | 4 |
| Knowledge of Occurrence, Claim or Suit | | 4 |
| Unintentional Errors Or Omissions | | 4 |
| Personal & Advertising Injury Amendment of Discrimination or Humiliation | | 4 |
| Incidental Malpractice Liability | | 5 |
| Additional Insured: Owners, Lessees, and Contractors | | 5 |
| Additional Insured: Vendors | | 6 |
| Primary and Non-Contributory Extension | | 8 |
| Damage to Premises Rented to You (Fire, Lightning, and "Explosion") | | 8 |
| Waiver of Subrogation | | 9 |
| Property Damage - Elevators | | 9 |

ESG 3206 (Ed. 01/16)                    (Page 1 of 10)

| Coverage | Limit of Insurance | Page |
|---|---|---|
| Contractual Liability for Railroad Exposures | | 10 |
| Supplementary Payments: Bail Bonds | | 10 |
| Supplementary Payments: Loss of Earnings | | 10 |
| Amended Bodily Injury Definition | | 10 |

A. **Non-Owned Aircraft**

Under paragraph **2. Exclusions** of **SECTION I - COVERAGES - Coverage A - Bodily Injury and Property Damage Liability**, exclusion **g. Aircraft, Auto or Watercraft** does not apply to an aircraft provided:

1. it is not owned by any insured;

2. it is hired, chartered or loaned with a trained paid crew;

3. the pilot in command holds a currently effective certificate, issued by the duly constituted authority of the United States of America or Canada, designating him or her a commercial or airline pilot; and

4. it is not being used to carry persons or property for a charge.

However, the insurance afforded by this provision does not apply if there is available to the Insured other valid and collectible insurance, whether primary, excess (other than insurance written to apply specifically in excess of this Policy), contingent or on any other basis, that would also apply to the loss covered under this provision.

B. **Non-Owned Watercraft**

Under paragraph **2. Exclusions** of **SECTION I - COVERAGES - Coverage A - Bodily Injury and Property Damage Liability**, subparagraph **(2)** of exclusion **g. Aircraft, Auto or Watercraft** is replaced by the following:

This exclusion does not apply to:

**(2)** A watercraft you do not own that is:

   **(a)** less than 55 feet long; and

   **(b)** not being used to carry persons or property for a charge.

However, the insurance afforded by this provision does not apply to watercraft 27 to 55 feet long if there is available to the Insured other valid and collectible insurance, whether primary, excess (other than insurance written to apply specifically in excess of this Policy), contingent or on any other basis, that would also apply to the loss covered under this provision.

**C. Medical Payments Increased Limits**

Unless **Coverage C - Medical Payments,** or the Product-Completed Operations Hazard has been excluded from this Policy, the following applies:

Under paragraph **2. Exclusions** of **SECTION I - COVERAGES, Coverage C - Medical Payments,** exclusion **f. Products-Completed Operations Hazard** is replaced by the following:

**f. Product-Completed Operations Hazard**

Included within the "products-completed operations hazard."

However, this exclusion does not apply to expenses for dental services.

The Medical Expense Limit in paragraph **7.** of **SECTION III - LIMITS OF INSURANCE** is replaced by the following Medical Expense Limit:

The Medical Expense Limit provided by this Policy shall be the greater of:

**a.** $20,000; or

**b.** the amount shown in the Declarations for Medical Expense Limit

This provision **7.** is subject to all the terms of **SECTION III - LIMITS OF INSURANCE**

**D. Who Is An Insured: Broadened Named Insured**

Under **SECTION II - WHO IS AN INSURED**, the following item **2.e.** is added:

**e.** Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of voting stock on the effective date of this Coverage Part. The insurance afforded herein for any subsidiary not named in this Coverage Part as a Named Insured does not apply to injury or damage with respect to which an insured under this Coverage Part is also an insured under another policy or would be an insured under such policy but for its termination or the exhaustion of its Limits of Insurance.

**E. Who Is An Insured: Fellow Employee**

**1.** The following is added to paragraph **2.a.(1)** of **SECTION II - WHO IS AN INSURED**

Paragraph **(a)** and **(b)** above do not apply to "bodily injury" or "personal and advertising injury" caused by a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business. However, none of these co-"employees" are insureds for "bodily injury" or "personal and advertising injury" arising out of their willful conduct, which is defined as the purposeful or willful intent to cause "bodily injury" or "personal and advertising injury," caused in whole or in part by their intoxication by liquor or controlled substances.

Paragraph **(a)** and **(b)** above do not apply to "bodily injury" or "personal and advertising injury" caused by an "employee" who is acting in a supervisory capacity for you. Supervisory capacity as used herein means the "employee's" job responsibilities assigned by you, including the direct supervision of other "employees" of yours. However, none of these "employees" are insureds for "bodily injury" or "personal and advertising injury" arising out of their willful conduct, which is defined as the purposeful or willful intent to cause "bodily injury" or "personal and advertising injury," caused in whole or in part by their intoxication by liquor or controlled substances.

This coverage is excess over any other valid and collectible insurance available to your "employee" or "volunteer worker."

ESG 3206 (Ed. 01/16)                    (Page 3 of 10)

**F.  Who Is An Insured: Newly Formed or Acquired Organizations**

Paragraph **3.** of **SECTION II - WHO IS AN INSURED** is replaced by the following:

**3.**  Any organization you newly acquire or form and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.  coverage under this provision is afforded only until the next occurring annual anniversary of the beginning of the policy period shown in the Declarations, or the end of the policy period, whichever is earlier; and

b.  coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.  coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization; and

d.  records and descriptions of operations must be maintained by the first Named Insured.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations or qualifies as an insured under this provision.

**G.  Knowledge of Occurrence, Claim or Suit**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to Condition **2. Duties in the Event of Occurrence, Offense, Claim or Suit:**

Knowledge of any "occurrence", claim, or "suit" by any agent, servant or "employee" of the Named Insured does not in itself constitute knowledge by the Insured unless notice of such "occurrence", claim or "suit" shall have been received by:

a.  you, if you are an individual;

b.  a partner, if you are a partnership; or

c.  an executive officer or insurance manager, if you are a corporation.

**H.  Unintentional Errors or Omissions**

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, the following is added to Condition **6. Representations:**

If you unintentionally fail to disclose any hazards existing at the inception date of this Policy, we will not deny coverage under this Coverage Form because of such failure.

However, this does not affect our right to collect additional premium, exercise our right of cancellation or non-renewal, or enforce other legal rights based upon a material misrepresentation in response to a specific question in the application for this Policy.

**I.  Personal and Advertising Injury Amendment of Discrimination or Humiliation**

Unless **Coverage B - Personal and Advertising Injury Liability** is excluded from this Policy or does not apply, the following applies:

Under **SECTION V - DEFINITIONS**, paragraph **14. Personal and Advertising Injury**, subparagraph **h.** is added:

ESG 3206 (Ed. 01/16)                          (Page 4 of 10)

**h.** discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

**(1)** not done intentionally by or at the direction of;

**(a)** an insured; or

**(b)** any "executive officer," director, stockholder, partner or member of the Insured; and

**(2)** not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

**J. Incidental Malpractice Liability**

**1.** **SECTION II - WHO IS AN INSURED** is amended by deleting item **2.a.(1)(d)** in its entirety and replacing it with the following:

**(d)** Arising out of his or her providing or failing to provide professional health care services. However, this exclusion does not apply to nurses, emergency medical technicians or paramedics who are employed by you to provide medical or paramedical services.

**2.** Under **SECTION V - DEFINITIONS**, paragraph **3. Bodily Injury** is replaced by the following:

**3.** **"Bodily injury"** means injury, sickness, disease or "incidental medical malpractice" sustained by a person, including death of a person. "Bodily injury" also means mental anguish, mental injury, or shock if directly resulting from physical injury, sickness, or disease to that person.

**3.** The following is added to **SECTION V - DEFINITIONS**:

**"Incidental medical malpractice"** means "bodily injury" arising out of the negligent rendering or failure to render medical or paramedical services to persons by any physician, dentist, nurse, emergency medical technician or paramedic who is employed by you to provide such services provided you are not engaged in the business or occupation of providing any services referred to in this definition.

**K. Additional Insured**

**1. Owners, Lessees, or Contractors**

**a.** **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured:

**(1)** Any person or organization, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**(a.)** premises or equipment you own, rent, lease or occupy; or

**(b.)** your acts or omissions; or

**(c.)** the acts or omissions of those acting on your behalf;

In the performance of your ongoing operations for the additional insured.

However;

**(a.)** the insurance afforded to such additional insured only applies to the extent permitted by law; and

ESG 3206 (Ed. 01/16)                    (Page 5 of 10)

**(b.)** if coverage provided to the Additional Insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**b.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

**(1)** This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(a.)** all work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured at the location of the covered operations has been completed; or

**(b.)** that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

**(2)** The insurance provided to any additional insured does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including:

**(a.)** The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

**(b.)** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or the failure to render any professional services by or for you.

**c.** With respect to the insurance afforded to these Additional Insureds, the following is added to **SECTION III - LIMITS OF INSURANCE:**

If coverage provided to the Additional Insured is required by a contract or agreement, the most we will pay on behalf of the Additional Insured is the amount of insurance:

**(1)** Required by the contract or agreement; or

**(2)** Available under the applicable Limits of Insurance shown in the Declarations;

Whichever is less.

**2. Vendors**

**a. SECTION II - WHO IS AN INSURED**, is amended to include as an additional insured:

**(1.)** Any person or organization (referred to below as vendor), but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

However:

ESG 3206 (Ed. 01/16)                          (Page 6 of 10)

(a.) the insurance afforded to such vendor only applies to the extent permitted by law; and

(b.) if coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

b. With respect to the insurance afforded to these vendors, the following additional exclusions apply:

(1.) The insurance afforded the vendor does not apply to:

(a.) "bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b.) any express warranty unauthorized by you;

(c.) any physical or chemical change in the product made intentionally by the vendor;

(d.) repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e.) any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f.) demonstration, installation, servicing or repair operations, except such operations performed by the vendor in full compliance with the manufacturer's written instructions at the vendor's premises in connection with the sale of the product;

(g.) products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor;

(h.) "bodily injury" or "property damage" arising out of the sole negligence of the vendors for its own acts or omission of those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

(i) the exceptions contained in subparagraphs (d.) or (f.); or

(ii) such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

(2.) This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

c. With respect to the insurance afforded to these vendors, the following is added to **SECTION III - LIMITS OF INSURANCE:**

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the most amount of insurance:

(1.) Required by the contract or agreement; or

ESG 3206 (Ed. 01/16)                    (Page 7 of 10)

**(2.)**    Available under the applicable Limits of Insurance shown in the Declarations;

Whichever is less.

3.    **Primary and Non-Contributory Extension**

This provision applies to any person or organization who qualifies as an additional insured under any form or endorsement under this Policy.

Condition **4. Other Insurance** of **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:

a.    The following is added to paragraph **a. Primary Insurance:**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1.)**    The Additional Insured is a Named Insured under such other insurance; and

**(2.)**    You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

b.    The following is added to paragraph **b. Excess Insurance:**

When a written contract or written agreement, other than a premises lease, facilities rental contract or agreement, an equipment rental or lease contract or agreement, or permit issued by a state or political subdivision between you and an Additional Insured does not require this insurance to be primary or primary and non-contributory, this insurance is excess over any other insurance for which the Additional Insured is designated as a Named Insured.

Regardless of the written agreement between you and an additional insured, this insurance is excess over any other insurance whether primary, excess, contingent or on any other basis for which the additional insured has been added as an Additional Insured on other policies.

L.    **Damage to Premises Rented to You**

If Damage to Premises Rented to You is not otherwise excluded from this Coverage Part:

1.    Under paragraph **2. Exclusions** of **SECTION I - COVERAGE A - Bodily Injury and Property Damage Liability:**

3.    The last paragraph of paragraph **2. Exclusions** is deleted in its entirety and replaced by the following:

Exclusions **c.** through **n.** do not apply to damage by fire, lightning, or "explosion," to premises while rented to you or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in **SECTION III - LIMITS OF INSURANCE**.

2.    Paragraph **6.** Under **SECTION III - LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

6.    Subject to paragraph **5.** Above, the most we will pay under **Coverage A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage caused by fire, lightning, or "explosion," while rented to you or temporarily

ESG 3206 (Ed. 01/16)                    (Page 8 of 10)

occupied by you with the permission of the owner, for all such damage caused by fire, lightning, or "explosion," proximately caused by the same event, whether such damage results from fire, lightning, or "explosion," or any combination of the three, is the higher of **$500,000** or the amount shown in the Declarations for the Damage to Premises Rented to You Limit.

3.  Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS,** subsection **4. Other Insurance**, paragraph **b. Excess Insurance item (ii) of the Occurrence Form** and **item (iii) of the Claims-Made Form** where the words, fire insurance, appear they are changed to, insurance for fire, lightning, or "explosion."

4.  As regards coverage provided by this provision **L. Damage to Premises Rented to You**, **SECTION V - DEFINITIONS**, paragraph **9. Insured Contract**, subparagraph **a.** is replaced with the following:

    a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire, lightning, or "explosion," to premises while rented to you or temporarily occupied by you with the permission of the owner is not an "insured contract."

5.  As regards coverage provided by this provision **L. Damage to Premises Rented to You**, **SECTION V - DEFINITIONS** is amended by the addition of the following definition:

    **"Explosion"** means a sudden release of expanding pressure accompanied by a noise, a bursting forth of material and evidence of the scattering of debris to locations further than would have resulted by gravity alone.

    "Explosion" does not include any of the following:

    (a)  artificially generated electrical current including electrical arcing, that disturbs electrical devices, appliances or wires;

    (b)  rupture or bursting of water pipes;

    (c)  explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control; or

    (d)  rupture or bursting caused by centrifugal force.

M.  **Waiver of Subrogation**

    Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, subsection **8. Transfer or Rights of Recovery Against Others to Us**, the following paragraph is added:

    b.  If required by a written "insured contract" executed prior to the occurrence or offense, we waive our right of recovery we have against any person or organization named in such "insured contract," because of payments we make for injury or damage arising out of your ongoing operations or "your work" for that person or organization.

N.  **Property Damage - Elevators**

    1.  Under paragraph **2. Exclusions** of **SECTION I - COVERAGE A - Bodily Injury and Property Damage Liability**, subparagraphs **(3)**, and **(4)** of exclusion **j. Damage to Property** do not apply if such "property damage" results from the use of elevators.

ESG 3206 (Ed. 01/16)                    (Page 9 of 10)

2. The following is added to **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, Condition **4. Other Insurance**, paragraph **b. Excess Insurance**

The insurance afforded by this provision of this endorsement is excess over any property insurance, whether primary, excess, contingent or on any other basis.

**O. Contractual Liability for Railroad Exposures**

Under **SECTION V - DEFINITIONS**, paragraph **9. Insured Contract**, subparagraph **f.(1)**, is deleted in its entirety.

**P. Supplementary Payments**

1. In the **Supplementary Payments - Coverages A and B** provision, paragraph **1.b.** is replaced with:

   b. Up to **$2,500** for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

2. In the **Supplementary Payments - Coverages A and B** provision, paragraph **1.d.** is replaced by the following:

   d. All reasonable expenses incurred by the Insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to **$500** a day because of time off work.

**Q. Amended Bodily Injury Definition**

Under **SECTION V - DEFINITIONS**, definition **3. Bodily injury** is replaced by the following:

3. **"Bodily injury"** means bodily injury, sickness, or disease sustained by a person, including death of a person. "Bodily injury" also means mental anguish, mental injury, or shock, if directly resulting from physical injury, sickness, or disease to that person.

CG 04 36 (Ed. 04/13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITED PRODUCT WITHDRAWAL EXPENSE ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**Schedule**

| | | |
|---|---|---|
| **Aggregate Limit** | $ | |
| **Deductible Amount Per Product Withdrawal** | $ | |
| **Participation Percentage Per Product Withdrawal** | | |
| **Cut-off Date** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**THIS ENDORSEMENT ONLY PROVIDES REIMBURSEMENT TO YOU FOR EXPENSES INCURRED BECAUSE OF A COVERED "PRODUCT WITHDRAWAL." THIS ENDORSEMENT DOES NOT PROVIDE ANY LIABILITY COVERAGE OR COVERAGE FOR THE COST OR EXPENSE OF DEFENDING ANY CLAIM OR SUIT.**

A.  The following is added to **SECTION I - COVERAGES**:

**SECTION I - LIMITED PRODUCT WITHDRAWAL EXPENSE COVERAGE**

1.  **Insuring Agreement**

   a.  We will reimburse you for "product withdrawal expenses" incurred by you because of a "product withdrawal" to which this insurance applies.

   The amount of such reimbursement is limited as described in **SECTION III - LIMITS OF INSURANCE**. No other obligation or liability to pay sums or perform acts or services is covered.

   b.  This insurance applies to a "product withdrawal" only if the "product withdrawal" is initiated in the "coverage territory" during the policy period because:

   (1)  you determine that the "product withdrawal" is necessary; or

   (2)  an authorized government entity has ordered you to conduct a "product withdrawal".

   c.  We will reimburse "product withdrawal expenses" only if:

   (1)  the expenses are incurred within one year of the date the "product withdrawal" was initiated;

   (2)  the expenses are reported to us within one year of the date the expenses were incurred; and

© Insurance Services Office, Inc., 2012

CG 04 36 (Ed. 04/13)                                    (Page 1 of 6)

**(3)** the product that is the subject of the "product withdrawal" was produced after the Cut-off Date designated in the Schedule.

**d.** The initiation of a "product withdrawal" will be deemed to have been made only at the earliest of the following times:

**(1)** when you first announced, in any manner, to the general public, your vendors or to your employees (other than those employees directly involved in making the determination) your decision to conduct or participate in a "product withdrawal". This applies regardless of whether the determination to conduct a "product withdrawal" is made by you or is requested by a third party; or

**(2)** when you first received, either orally or in writing, notification of an order from an authorized government entity to conduct a "product withdrawal".

**e.** "Product withdrawal expenses" incurred to withdraw "your products" which contain the same or substantially similar "defects" will be deemed to have arisen out of the same "product withdrawal".

**2. Exclusions**

This insurance does not apply to "product withdrawal expenses" arising out of:

**a. Breach of Warranty and Failure to Conform to Intended Purpose**

Any "product withdrawal" initiated due to the failure of "your product" to accomplish its intended purpose, including any breach of warranty of fitness, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property other than "your product".

**b. Infringement of Copyright, Patent, Trade Secret, Trade Dress or Trademark**

Any "product withdrawal" initiated due to copyright, patent, trade secret, trade dress or trademark infringements.

**c. Deterioration, Decomposition or Chemical Transformation**

Any "product withdrawal" initiated due to transformation of a chemical nature, deterioration or decomposition of "your product". This exclusion does not apply if it is caused by:

**(1)** an error in manufacturing, design, or processing;

**(2)** transportation of "your product"; or

**(3)** "product tampering".

**d. Goodwill, Market Share, Revenue, Profit or Redesign**

The costs of regaining goodwill, market share, revenue or "profit" or the costs of redesigning "your product".

**e. Expiration of Shelf Life**

Any "product withdrawal" initiated due to expiration of the designated shelf life of "your product".

© Insurance Services Office, Inc., 2012

**f.  Known Defect**

A "product withdrawal", initiated because of a "defect" in "your product" known to exist by the Named Insured or the Named Insured's "executive officers", prior to the date when this Coverage Part was first issued to you or prior to the time "your product" leaves your control or possession.

**g.  Otherwise Excluded Products**

A recall of any specific products for which "bodily injury" or "property damage" is excluded under **Coverage A - Bodily Injury and Property Damage Liability** by endorsement.

**h.  Governmental Ban**

A recall when "your product" or a component contained within "your product" has been:

**(1)**  banned from the market by an authorized government entity prior to the policy period; or

**(2)**  distributed or sold by you subsequent to any governmental ban.

**i.  Defense of Claim**

The defense of a claim or "suit" against you for liability arising out of a "product withdrawal".

**j.  Third-party Damages, Fines and Penalties**

Any compensatory damages, fines, penalties, punitive or exemplary or other noncompensatory damages imposed upon the Insured.

**k.  Pollution-related Expenses**

Any loss, cost or expense due to any:

**(1)**  request, demand, order, statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)**  claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**B.**  For the purposes of this endorsement, **SECTION III - LIMITS OF INSURANCE** is replaced by the following:

**SECTION III - LIMITS OF INSURANCE**

**1.**  The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**a.**  insureds;

**b.**  "product withdrawals" initiated; or

**c.**  number of "your products" withdrawn.

**2.**  The Aggregate Limit is the most we will reimburse you for the sum of all "product withdrawal expenses" incurred for all "product withdrawals" initiated during the policy period.

**3. Deductible and Participation Percentage Provisions**

**a. Deductible**

We will only pay for the amount of "product withdrawal expenses" which are in excess of the deductible amount, if any, shown in the Schedule of this endorsement. The deductible applies separately to each "product withdrawal". The Limits of Insurance will not be reduced by the amount of this deductible.

We may, or will if required by law, pay all or any part of any deductible amount, if applicable. Upon notice of our payment of a deductible amount, you shall promptly reimburse us for the part of the deductible amount we paid.

**b. Participation Percentage**

If a Participation Percentage is indicated in the Schedule of this endorsement, the following provision applies:

You agree to participate in the payment of "product withdrawal expenses" which are in excess of the Deductible, to the extent of the Participation Percentage indicated in the Schedule. The Participation Percentage will apply separately to each "product withdrawal".

You also agree that the cost of your participation in each "product withdrawal" will be borne entirely by you when due and you will not obtain insurance to cover it.

The Limits of Insurance of Product Withdrawal Expense Coverage apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**C.** For the purposes of this endorsement, the **Duties in the Event of Occurrence**, **Claim or Suit** Condition under **SECTION IV - CONDITIONS** is replaced by the following:

**2. Duties in the Event of a "Defect" or a "Product Withdrawal"**

**a.** You must see to it that we are notified as soon as practicable of any actual, suspected or threatened "defect" in "your product", or any governmental investigation, that may result in a "product withdrawal". To the extent possible, notice should include:

**(1)** how, when and where the "defect" was discovered;

**(2)** the names and addresses of any injured persons and witnesses; and

**(3)** the nature, location and circumstances of any injury or damage arising out of use or consumption of "your product".

**b.** If a "product withdrawal" is initiated, you must:

**(1)** immediately record the specifics of the "product withdrawal" and the date it was initiated; and

**(2)** notify us as soon as practicable.

You must see to it that we receive written notice of the "product withdrawal" as soon as practicable.

© Insurance Services Office, Inc., 2012

**c.** You must promptly take all reasonable steps to mitigate the expenses associated with a "product withdrawal". Any "profit" that you receive from mitigating the expenses will be deducted from the amount of reimbursement that you will receive for "product withdrawal expenses".

**d.** You and any other involved insured must:

**(1)** immediately send us copies of pertinent correspondence received in connection with the "product withdrawal";

**(2)** authorize us to obtain records and other information; and

**(3)** cooperate with us in our investigation of the "product withdrawal".

**D.** For the purposes of this endorsement, the following condition is added to **SECTION IV - CONDITIONS**:

**Concealment or Fraud**

We will not provide coverage under Section I of this endorsement to you, or any other insured, who at any time:

**1.** engaged in fraudulent conduct; or

**2.** intentionally concealed or misrepresented a material fact concerning a "product withdrawal" or "product withdrawal expenses" incurred by you under Section I of this endorsement.

**E.** The following definitions are added to the **Definitions** section:

**1.** "Defect" means a defect, deficiency or inadequacy that creates a dangerous condition.

**2.** "Product tampering" is an act of intentional alteration of "your product" which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product".

When "product tampering" is known, suspected or threatened, a "product withdrawal" will be limited to those batches of "your product" which are known or suspected to have been tampered with.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**3.** "Product withdrawal" means the recall or withdrawal:

**a.** from the market; or

**b.** from use by any other person or organization;

of "your products," or products which contain "your products," because of known or suspected "defects" in "your product," or known or suspected "product tampering," which has caused or is reasonably expected to cause "bodily injury" or physical injury to tangible property other than "your product."

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy

© Insurance Services Office, Inc., 2012

disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

4.  "Product withdrawal expenses" means those reasonable and necessary extra expenses, listed below, paid and directly related to a "product withdrawal":

  a.  costs of notification;

  b.  costs of stationery, envelopes, production of announcements and postage or facsimiles;

  c.  costs of overtime paid to your regular nonsalaried employees and costs incurred by your employees, including costs of transportation and accommodations;

  d.  costs of computer time;

  e.  costs of hiring independent contractors and other temporary employees;

  f.  costs of transportation, shipping or packaging;

  g.  costs of warehouse or storage space; or

  h.  costs of proper disposal of "your products", or products that contain "your products", that cannot be reused, not exceeding your purchase price or your cost to produce the products.

5.  **"Profit"** means the positive gain from business operation after subtracting for all expenses.

© Insurance Services Office, Inc., 2012

CG 04 36 (Ed. 04/13)                    (Page 6 of 6)

AES 3012 (Ed. 08 11)

## GENERAL SERVICE OF SUIT ENDORSEMENT
### (Not applicable in Delaware or Pennsylvania)

Pursuant to any statute of any state or district of the United States of America that makes provision therefor, the Insurer hereby designates the commissioner, superintendent or director of insurance or other officer specified for that purpose in the statute and his or her successors in office and duly authorized deputies as the Insurer's true and lawful attorney for service of legal process in any action, suit or proceeding brought in the state where this Policy is issued by or on behalf of an insured or beneficiary against the Insurer arising out of the insurance issued under this Policy. Any legal process received by such attorney for service of legal process shall be forwarded, except as provided below, to the attention of: **Office of General Counsel, P&C Legal Group, Great American Insurance Group, 301 E. 4th Street, Cincinnati, Ohio 45202**.

In **California**, any legal process received by the Insurer's statutory attorney for service of process shall be forwarded to the attention of: **Nancy Flores, The CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017**;

In the **District of Columbia**, any legal process received by the Insurer's statutory attorney for service of process shall be forwarded to **CT Corporation System, 1015 15th Street, NW, Suite 1000, Washington, DC 20005**;

In **Illinois**, the Director, at his or her option, may forward a copy of the process to the Surplus Line Association of Illinois for delivery to the unauthorized insurer or may deliver the process to unauthorized insurer by another means which the Director considers to be reasonably prompt and certain. To be valid, the process must state the names of the Insured and the unauthorized insurer and identify the contract of insurance.

In **Maine**, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this Policy, and directs that all legal process be mailed to: **CT Corporation System, One Portland Square, Portland, Maine 04101**.

In **Oregon**, the Insurer and the Insured policyholder hereby agree to waive the provisions of Oregon Insurance Code section **735.490** requiring that service of legal process in any action relating to this Policy shall be served on the insurance agent who registered or delivered this Policy, and instead agree that such service of legal process be mailed directly to **Office of General Counsel, P&C Legal Group, Great American Insurance Group, 301 E. 4th Street, Cincinnati, Ohio 45202**.

In **Rhode Island**, the Insurer hereby designates CT Corporation System as its attorney for service of legal process in any action relating to this Policy, and directs that all legal process be mailed to: **CT Corporation System, 10 Weybosset Street, Providence, Rhode Island 02903**.

The foregoing designations of attorney for service of legal process upon the Insurer shall not constitute a waiver of the Insurer's rights to remove, remand, dismiss or transfer any suit or proceeding from any court, or to commence any suit or other proceeding in any court of competent jurisdiction.

Dated: 08/01/2011

AES 3012 (Ed. 08/11)

**IL 72 68**
(Ed. 09 09)

## In Witness Clause

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

**President**                                                            **Secretary**

IL7268GG (09/09)                  Copyright Great American Insurance Co., 2009
IL 72 68 (Ed. 09/09)

CG 20 28 (Ed. 04/13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED - LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| **Name of Additional Insured Person(s) or Organization(s)**: |
|---|
| Blanket as required by contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

However:

**1.** the insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** if coverage provided to the Additional Insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these Additional Insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**C.** With respect to the insurance afforded to these Additional Insureds, the following is added to **SECTION III - LIMITS OF INSURANCE**:

If coverage provided to the Additional Insured is required by a contract or agreement, the most we will pay on behalf of the Additional Insured is the amount of insurance:

**1.** required by the contract or agreement; or

**2.** available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office Inc., 2012

Great American E&S Insurance Company

IL 73 24 (Ed. 08 12)

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CLAUSE**

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

IL 73 24 (Ed. 08/12)

CG 21 07 (Ed. 05 14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - ACCESS OR DISCLOSURE OF
CONFIDENTIAL OR PERSONAL INFORMATION AND
DATA-RELATED LIABILITY - LIMITED BODILY INJURY
EXCEPTION NOT INCLUDED**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **SECTION I - COVERAGE A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access or Disclosure of Confidential or Personal Information and Data-related Liability**

Damages arising out of:

**(1)** any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to paragraph **2. Exclusions** of **SECTION I - COVERAGE B - Personal and Advertising Injury Liability**:

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Copyright, Insurance Services Office, Inc., 2013

CG 21 07 (Ed. 05/14)

CG 83 83 (Ed. 08 14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - INFLUENZA A VIRUS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

The following is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, **SECTION I - COVERAGES**, **Coverage A. Bodily Injury and Property Damage Liability**, **2. Exclusions and Coverage B. Personal and Advertising Injury**, **2. Exclusions** or **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**, **SECTION I - COVERAGES PRODUCTS/COMPLETED OPERATIONS**, **2. Exclusions**:

**Influenza A Virus**

a. "Bodily injury," "property damage," or "personal and advertising injury" arising out of any actual, alleged or threatened infectious, pathogenic, toxic or other harmful properties of any "influenza."

b. Any loss, cost or expense arising out of any:

(i) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, destroy contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "influenza," or

(ii) claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "influenza."

The following definition is added to **SECTION V - DEFINITIONS**:

**"Influenza"** means any:

Infectious disease caused by any of the influenza A viruses.

**This endorsement does not change any other provision of the Policy.**

CG 83 83 (Ed. 08/14)

CG 84 81 (Ed. 08 14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - ORGANIC PATHOGENS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

The following is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, **SECTION I - COVERAGES**, **Coverage A. Bodily Injury and Property Damage Liability**, **2. Exclusions and Coverage B. Personal and Advertising Injury**, **2. Exclusions** or **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**, **SECTION I - COVERAGES PRODUCTS/COMPLETED OPERATIONS**, **2. Exclusions**:

**Organic Pathogens**

a. "Bodily injury," "property damage," or "personal and advertising injury" arising out of any actual, alleged or threatened infectious, pathogenic, toxic or other harmful properties of any "organic pathogen."

b. Any loss, cost or expense arising out of any:

(i) request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of any "organic pathogen," or

(ii) claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of any "organic pathogen."

The following definition is added to the **Definitions** Section:

**"Organic pathogen"** means any:

A. bacteria; mildew, mold or other fungi; other microorganisms; or mycotoxins, spores or other by-products of any of the foregoing;

B. viruses or other pathogens (whether or not a microorganism); or

C. colony or group of any of the foregoing.

**This endorsement does not change any other provision of the Policy.**

CG 84 81 (Ed. 08/14)

CG 90 29 (Ed. 05/16)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF CLAIMS AND SUITS ALLEGING INFRINGEMENT OF INTELLECTUAL PROPERTY OR UNFAIR COMPETITION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

A. **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, Coverage B - Personal and Advertising Injury Liability, 2. Exclusions, i. Infringement of Copyright, Patent, Trademark or Trade Secret**, is deleted and replaced by the following:

i. **Claim or Suit Alleging Infringement of Intellectual Property**

(1) Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property or intellectual property right or law of any description, including but not limited to any of the following:

(a) copyright;

(b) patent;

(c) trademark;

(d) trade name;

(e) trade secret;

(f) trade dress;

(g) service mark;

(h) slogan;

(i) service name;

(j) description of origin, source, authorship, authenticity, or quality;

(k) other right to or law recognizing an interest in any expression, idea, likeness, name, style of doing business, symbol, or title; or

(l) Any other intellectual property right or law.

This exclusion applies to our duty to defend and our duty to pay damages whether such misappropriation, infringement, or violation is committed in your "advertisement" or otherwise.

CG 90 29 (Ed. 05/16)                                    (Page 1 of 2)

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury Liability, 2. Exclusions:**

**Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws**

1. Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

2. Any "personal and advertising injury" alleged in a claim or "suit" that also alleges any actual, alleged, or threatened violation of any statutes, common law, or other laws or regulations concerning unfair competition, antitrust, restraint of trade, piracy, unfair trade practices, or any similar laws or regulations.

This exclusion applies to our duty to defend and our duty to pay damages whether such misappropriation, infringement, or violation is committed in your "advertisement" or otherwise.

**C.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage A - Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws**

Any "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any:

1. misappropriation, infringement or violation of any intellectual property or intellectual property right or law described in paragraph (1) of **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury, 2. Exclusions, I. Claim or Suit Alleging Infringement of Intellectual Property;** or

2. violation of any statute, common law, or other laws or regulations described in **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury, 2. Exclusions, Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws.**

**D.** The following exclusions are added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage C - Medical Payments, 2. Exclusions:**

**Claim or Suit Alleging Infringement of Intellectual Property or Violation of Laws Concerning Unfair Competition or Similar Laws**

Any medical expenses alleged in any claim or "suit" that also alleges any:

a. misappropriation, infringement or violation of any intellectual property or intellectual property right or law described in paragraph (1) of **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury, 2. Exclusions, I. Claim or Suit Alleging Infringement of Intellectual Property**, or

b. violation of any statute, common law, or other laws or regulations described in **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury, 2. Exclusions, Claim or Suit Alleging Violation of Laws Concerning Unfair Competition or Similar Laws.**

**All other policy terms and conditions remain unchanged.**

CG 90 29 (Ed. 05/16)                    (Page 2 of 2)

Great American E&S Insurance Company

ESG 1010 (Ed. 08/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION – AIRCRAFT PRODUCTS AND GROUNDING LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Aircraft Products and Grounding Liability**

Any "bodily injury" or "property damage" arising out of or related in any way to:

**1.** "aircraft products;"

**2.** "grounding" of any aircraft; or

**3.** missiles, rockets, satellites or spacecraft.

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B. Personal and Advertising Injury Liability, 2. Exclusions:**

**Aircraft Products and Grounding Liability**

Any "personal and advertising injury" arising out of or related in any way to:

**1.** "aircraft products;"

**2.** "grounding" of any aircraft; or

**3.** missiles, rockets, satellites or spacecraft.

**C.** The following definitions are added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION V – DEFINITIONS of the Occurrence Form** and **SECTION VI – DEFINITIONS of the Claims-Made Form:**

**1.** **"Aircraft products"** means aircraft or any ground support or control equipment used in relation to aircraft, including:

**a.** any aircraft parts;

**b.** any products installed in or on aircraft;

**c.** any goods or products used in connection with an aircraft; and

**d.** ground handling tools and equipment.

**ESG 1010 (Ed. 08/16)**                      (Page 1 of 3)

"Aircraft products" also includes any:

    **a.** tooling used in the manufacture of any such parts, goods, products, tools or equipment;

    **b.** representations or warranties made with respect to any such parts, goods, products, tools or equipment;

    **c.** training aids, instructions, manuals, blueprints, engineering and other data engineering reports for any such parts, goods, products, tools or equipment; and

    **d.** other advice, services, and labor relating to any such parts, goods, products, tools or equipment.

**2.** **"Grounding"** means the withdrawal of an aircraft from flight operations, or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the actual, alleged or suspected existence of any defect, fault, or condition of "aircraft products."

**D.** The following exclusion is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION I – COVERAGES PRODUCTS/COMPLETED OPERATIONS, 2. Exclusions:**

**Aircraft Products and Grounding Liability**

Any "bodily injury" or "property damage" arising out of or related in any way to:

**1.** "aircraft products;"

**2.** "grounding" of any aircraft; or

**3.** missiles, rockets, satellites or spacecraft.

**E.** The following definitions are added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION V – DEFINITIONS of the Occurrence Form** and **SECTION VI – DEFINITIONS of the Claims-Made Form:**

**1.** **"Aircraft products"** means aircraft or any ground support or control equipment used in relation to aircraft, including:

    **a.** any aircraft parts;

    **b.** any products installed in or on aircraft;

    **c.** any goods or products used in connection with an aircraft; and

    **d.** ground handling tools and equipment.

"Aircraft products" also includes any:

    **a.** tooling used in the manufacture of any such parts, goods, products, tools or equipment;

    **b.** representations or warranties made with respect to any such parts, goods, products, tools or equipment;

    **c.** training aids, instructions, manuals, blueprints, engineering and other data engineering reports for any such parts, goods, products, tools or equipment; and

**ESG 1010 (Ed. 08/16)**                    (Page 2 of 3)

    **d.**  other advice, services, and labor relating to any such parts, goods, products, tools or equipment.

**2.**  **"Grounding"** means the withdrawal of an aircraft from flight operations, or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the actual, alleged or suspected existence of any defect, fault, or condition of "aircraft products."

**This endorsement does not change any other provision of the policy.**

**ESG 1010 (Ed. 08/16)**                (Page 3 of 3)

IL 70 69 (Ed. 03/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - ASBESTOS**

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      PRODUCTS AND COMPLETED OPERATIONS COVERAGE PART
      OWNER AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      FARM COVERAGE PART

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of or related in any way to asbestos, asbestos-containing materials, or asbestos-containing products.

We shall not have the duty to defend any such claim or "suit."

IL 70 69 (Ed. 03/16)

ESG 3216 (Ed. 05/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - BISPHENOL A (BPA) AND PHTHALATES

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Bisphenol A (BPA) and Phthalates**

1. Any "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, presence of, exposure to, or use of Bisphenol A, phthalates, or phthalate esters in any material or product.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Bisphenol A, phthalates, or phthalate esters; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Bisphenol A, phthalates, or phthalate esters.

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B. Personal and Advertising Injury, 2. Exclusions:**

**Bisphenol A (BPA) and Phthalates**

1. Any "personal and advertising injury" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, presence of, exposure to, or use of Bisphenol A, phthalates, or phthalate esters in any material or product.

2. Any loss, cost or expense arising out of any:

   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Bisphenol A, phthalates, or phthalate esters; or

   b. Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Bisphenol A, phthalates, or phthalate esters.

C.  The following is exclusion is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION I - COVERAGES PRODUCTS/COMPLETED OPERATIONS, 2. Exclusions:**

**Bisphenol A (BPA) and Phthalates**

1.  Any "bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, escape, presence of, exposure to, or use of Bisphenol A, phthalates, or phthalate esters in any material or product.

2.  Any loss, cost or expense arising out of any:

    a.  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of Bisphenol A, phthalates, or phthalate esters; or

    b.  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Bisphenol A, phthalates, or phthalate esters.

**This endorsement does not change any other provision of the policy.**

ESG 3216 (Ed. 05/15)                              (Page 2 of 2)

Great American E&S Insurance Company

ESG 3229 (Ed. 06/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - EMPLOYER'S LIABILITY**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**A.** Under **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions, e. Employer's Liability,** is replaced by the following:

**e. Employer's Liability**

**"Bodily injury"** to:

**(1)** an "employee" of any insured arising out of and in the course of:

**(a)** employment by any insured; or

**(b)** performing duties related to the conduct of the Insured's business; or

**(2)** the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** whether the Insured may be liable as an employer or in any other capacity;

**(2)** to any obligation to share damages with or repay someone else who must pay damages because of the injury; and

**(3)** to liability assumed by any insured under an "insured contract."

**B.** Under **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION I - COVERAGES PRODUCTS/COMPLETED OPERATIONS, Bodily Injury and Property Damage Liability, 2. Exclusions, e. Employer's Liability,** is replaced by the following:

**e. Employer's Liability**

**"Bodily injury"** to:

**(1)** an "employee" of any insured arising out of and in the course of:

**(a)** employment by any insured; or

**(b)** performing duties related to the conduct of the Insured's business; or

**(2)**   the spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)**   whether the Insured may be liable as an employer or in any other capacity;

**(2)**   to any obligation to share damages with or repay someone else who must pay damages because of the injury; and

**(3)**   to liability assumed by any insured under an "insured contract."

**This endorsement does not change any other provision of the policy.**

ESG 3229 (Ed. 06/15)                                (Page 2 of 2)

**CG 21 47**
(Ed. 12 07)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability**:

This insurance does not apply to:

"Bodily injury" to:

**(1)** a person arising out of any:

  **(a)** refusal to employ that person;

  **(b)** termination of that person's employment; or

  **(c)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** the spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

  **(1)** whether the injury-causing event described in paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

  **(2)** whether the Insured may be liable as an employer or in any other capacity; and

  **(3)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability**:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** a person arising out of any:

  **(a)** refusal to employ that person;

  **(b)** termination of that person's employment; or

  **(c)** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** the spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** whether the injury-causing event described in paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** whether the Insured may be liable as an employer or in any other capacity; and

**(3)** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, ISO Properties, Inc., 2006

CG 21 47 (Ed. 12/07) XS

Great American E&S Insurance Company

CG 77 94
(Ed. 07 98)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - LIABILITY ARISING OUT OF LEAD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

This insurance does not apply to:

1. "bodily injury," "property damage," or "personal and advertising injury" arising out of, resulting from, or in any way caused by or related to the actual, alleged or threatened ingestion, inhalation, absorption, or exposure to lead in any form from any source; or

2. any loss, cost, expense, liability or other type of obligation arising out of or resulting from, or in any way related to, any:

   a. claim, suit, request, demand, directive, or order by or on behalf of any person, entity, or governmental authority that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to, or assess the effects of lead in any form from any source, or to any

   b. claim or suit by or on behalf of any person, entity, or governmental authority for damages or any other relief or remedy because of testing for, monitoring, cleaning up, removing, containing, treating or detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead in any form.

We shall not be obligated to investigate on behalf of an Insured or to defend or indemnify an Insured or any person or entity claiming any right under the policy for the matters excluded in this endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CG 77 94 (Ed. 07/98) XS

ESG 1007 (Ed. 06/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - METAL GAS, FUME AND METAL BY-PRODUCT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Metal Gas**

Any "bodily injury" arising out of any actual, alleged, or threatened existence, ingestion, inhalation, absorption, exposure to or contact with any other metal gas, fume, or metal by-product of metal heating, cutting, processing or welding.

**B.** The following is exclusion is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION I - COVERAGES PRODUCTS/COMPLETED OPERATIONS, 2. Exclusions:**

**Metal Gas**

Any "bodily injury" arising out of any actual, alleged, or threatened existence, ingestion, inhalation, absorption, exposure to or contact with any other metal gas, fume, or metal by-product of metal heating, cutting, processing or welding.

**This endorsement does not change any other provision of the policy.**

ESG 1007 (Ed. 06/15)

Great American E&S Insurance Company

**IL 00 21**
(Ed. 09 08)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** with respect to which an "insured" under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its Limit of Liability; or

**(2)** resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "Insured" is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

**(1)** the "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** the "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its

territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

**"Nuclear material"** means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**"Spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

**"Waste"** means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

**"Nuclear facility"** means:

**(a)** any "nuclear reactor";

**(b)** any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel," or **(3)** handling, processing or packaging "waste";

**(c)** any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**"Nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**"Property damage"** includes all forms of radioactive contamination of property.

Copyright, ISO Properties, Inc., 2007

CG 83 66
(Ed. 06 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR, BIOLOGICAL, OR CHEMICAL EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM -
COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTORS

**A.** The following exclusion is hereby added to paragraph **2. Exclusions** of **SECTION I - COVERAGE A. Bodily Injury and Property Damage Liability**, of the **Commercial General Liability Coverage Form**, and to paragraph **2., Exclusions**, of **SECTION I. COVERAGES**, of the **Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor**:

**2. Exclusions**

**Nuclear, Biological, or Chemical**

Notwithstanding any other provision of this policy, this insurance does not apply to any "bodily injury" or "property damage" caused, directly or indirectly, in whole or in part, by any of the following, regardless of any other cause(s) or event(s) that may contribute concurrently or in any other sequence to the "bodily injury" or "property damage":

**(1)** Any actual, attempted, suspected, or threatened use of any "NBC material" as part of any plan, effort, or design, actually or apparently intended to cause any:

**(a)** loss or damage to any tangible or intangible property, or

**(b)** "bodily injury" or emotional distress.

**(2)** Any actual, attempted, suspected, or threatened presence, spread, dissemination, release, escape, or distribution of any "NBC material" as a direct or indirect result of any actual, attempted, suspected, or threatened plan, effort, or design, actually or apparently intended to cause any:

**(a)** loss or damage to any tangible or intangible property, or

**(b)** "bodily injury" or emotional distress.

**"NBC Material"** means any nuclear, biological, or chemical material or substance that causes damage to property or is harmful to human health. "NBC material" includes, but is not limited to:

**(1)** any radioactive substance or material, and the radiation it releases,

**(2)** any pathogen, bacterium, microbe, virus, or other organism,

**(3)** any substance or material produced by or from any pathogen, bacterium, microbe, virus, or other organism, and

**(4)** any poison, toxin, or other harmful chemical, substance, or material.

The foregoing list **(1)** through **(4)** is only illustrative, and should not be construed as a complete, exclusive, or exhaustive list of all "NBC materials."

**B.** The following exclusion is hereby added to paragraph **2.**, **Exclusions** of **SECTION I. COVERAGE B.**, **Personal and Advertising Injury Liability** of the **Commercial General Liability Coverage Form**:

**2. Exclusions**

**Nuclear, Biological, or Chemical**

Notwithstanding any other provision of this policy, this insurance does not apply to any "personal or advertising injury" caused, directly or indirectly, in whole or in part, by any of the following, regardless of any other cause(s) or event(s) that may contribute concurrently or in any other sequence to the "personal and advertising injury":

**(1)** Any actual, attempted, suspected, or threatened use of any "NBC material" as part of any plan, effort, or design, actually or apparently intended to cause any:

   **(a)** loss or damage to any tangible or intangible property, or

   **(b)** "bodily injury" or emotional distress.

**(2)** Any actual, attempted, suspected, or threatened presence, spread, dissemination, release, escape, or distribution of any "NBC material" as a direct or indirect result of any actual, attempted, suspected, or threatened plan, effort, or design, actually or apparently intended to cause any:

   **(a)** loss or damage to any tangible or intangible property, or

   **(b)** "bodily injury" or emotional distress.

**"NBC Material"** means any nuclear, biological, or chemical material or substance that causes damage to property or is harmful to human health. "NBC material" includes, but is not limited to:

**(1)** any radioactive substance or material, and the radiation it releases,

**(2)** any pathogen, bacterium, microbe, virus, or other organism,

**(3)** any substance or material produced by or from any pathogen, bacterium, microbe, virus, or other organism, and

**(4)** any poison, toxin, or other harmful chemical, substance, or material.

The foregoing list **(1)** through **(4)** is only illustrative, and should not be construed as a complete, exclusive, or exhaustive list of all "NBC materials."

**This endorsement does not change any other provision of the policy.**

CG 83 66 (Ed. 06/05) XS                              (Page 2 of 2)

Great American E&S Insurance Company

ESG 1005 (Ed. 04/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION - PHARMACEUTICALS AND SUPPLEMENTS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage A - Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Pharmaceuticals and Supplements**

Any "bodily injury" or "property damage" arising out of or resulting from any of the following products, or any derivative or related botanicals or extracts of the following products, whether as a primary ingredient or in combination with any other ingredient:

1. "Dietary supplements", including, but not limited to, those promoted to increase energy, sexual performance, aid in weight loss or gain, reduce body fat percentage or change body composition;

2. "Ethical pharmaceuticals";

3. Ingested vitamins and minerals;

4. Any product, supplement or additive that, at any time, is recalled including, but not limited to a recall classified by the United States Food and Drug Administration to be a "Class I Health Hazard".

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage B - Personal and Advertising Injury Liability, 2. Exclusions:**

**Pharmaceuticals and Supplements**

Any "personal and advertising injury" arising out of or resulting from any of the following products, or any derivative or related botanicals or extracts of the following products, whether as a primary ingredient or in combination with any other ingredient:

1. "Dietary supplements", including, but not limited to, those promoted to increase energy, sexual performance, aid in weight loss or gain, reduce body fat percentage or change body composition;

2. "Ethical pharmaceuticals";

3. Ingested vitamins and minerals;

4. Any product, supplement or additive that, at any time, is recalled, including, but not limited to a recall classified by the United States Food and Drug Administration to be a "Class I Health Hazard".

ESG 1005 (Ed. 04/15)                    (Page 1 of 3)

**C.** The following is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I - COVERAGES, Coverage C - Medical Payments, 2. Exclusions:**

**Pharmaceuticals and Supplements**

Any medical expenses for "bodily injury" arising out of or resulting from any of the following products, or any derivative or related botanicals or extracts of the following products, whether as a primary ingredient or in combination with any other ingredient:

1. "Dietary supplements", including, but not limited to, those promoted to increase energy, sexual performance, aid in weight loss or gain, reduce body fat percentage or change body composition;

2. "Ethical pharmaceuticals";

3. Ingested vitamins and minerals;

4. Any product, supplement or additive that, at any time, is recalled, including, but not limited to a recall classified by the United States Food and Drug Administration to be a "Class I Health Hazard".

**D.** The following exclusion is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION I - COVERAGES PRODUCTS/COMPLETED OPERATIONS, Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Pharmaceuticals and Supplements**

Any "bodily injury" or "property damage" arising out of or resulting from any of the following products, or any derivative or related botanicals or extracts of the following products, whether as a primary ingredient or in combination with any other ingredient:

1. "Dietary supplements", including, but not limited to, those promoted to increase energy, sexual performance, aid in weight loss or gain, reduce body fat percentage or change body composition;

2. "Ethical pharmaceuticals";

3. Ingested vitamins and minerals;

4. Any product, supplement or additive that, at any time, is recalled, including, but not limited to a recall classified by the United States Food and Drug Administration to be a "Class I Health Hazard".

**E.** The following definitions are added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION V. DEFINITIONS:**

**"Class I Health Hazard"** means a situation in which there is a reasonable probability that the use of, or exposure to, a violative product will cause serious adverse health consequences or death, as defined in the Code of Federal Regulations, Title 21, Chapter 1, as amended.

**"Dietary supplements"** means products taken by mouth that contains a "dietary ingredient" intended to supplement the diet.

As used in this definition, a "dietary ingredient" may be one, or any combination of the following substances:

a. A vitamin

b. A mineral

ESG 1005 (Ed. 04/15)                   (Page 2 of 3)

    **c.**  An herb or other botanical

    **d.**  An amino acid

    **e.**  A concentrate, metabolite, constituent, or extract.

**"Ethical pharmaceuticals"** means any drug, vaccine or medicine, which cannot be distributed to the general public by any means other than through the prescription of or usage by a licensed physician or medical doctor duly accredited by a recognized medical professional association, such as the American Medical Association, including, but not limited to:

    **a.**  Any drug, vaccine or medicine defined above that was ever banned from use by United States regulations; and

    **b.**  Any illegal drug, vaccine or medicine.

**F.**  The following definition is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION V. DEFINITIONS:**

**"Class I Health Hazard"** means a situation in which there is a reasonable probability that the use of, or exposure to, a violative product will cause serious adverse health consequences or death, as defined in the Code of Federal Regulations, Title 21, Chapter 1, as amended.

**"Dietary supplements"** means products taken by mouth that contains a "dietary ingredient" intended to supplement the diet.

As used in this definition, a "dietary ingredient" may be one, or any combination of the following substances:

    **a.**  A vitamin

    **b.**  A mineral

    **c.**  An herb or other botanical

    **d.**  An amino acid

    **e.**  A concentrate, metabolite, constituent, or extract.

**"Ethical pharmaceuticals"** means any drug, vaccine or medicine, which cannot be distributed to the general public by any means other than through the prescription of or usage by a licensed physician or medical doctor duly accredited by a recognized medical professional association, such as the American Medical Association, including, but not limited to:

    **a.**  Any drug, vaccine or medicine defined above that was ever banned from use by United States regulations; and

    **b.**  Any illegal drug, vaccine or medicine.

**This endorsement does not change any other provision of the policy.**

ESG 1005 (Ed. 04/15)                    (Page 3 of 3)

ESG 1001 (Ed. 09 13)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION - PRE-EXISTING DAMAGE**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**A.** The following is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, **SECTION I-COVERAGES**, **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. Exclusions**:

**Pre-Existing Damage**

**1.** "Bodily injury" or "property damage" arising out of, or related in any way, in whole or in part, either directly or indirectly, whether known or unknown:

   **a.** which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

   **b.** which is, or is alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

**2.** "Bodily injury" or "property damage" arising out of, or related in any way, in whole or in part, either directly or indirectly, whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

**B.** The following is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**, **SECTION I- COVERAGES PRODUCTS/COMPLETED OPERATIONS**, **Bodily Injury and Property Damage Liability**, **2. Exclusions**:

**Pre-Existing Damage**

**1.** "Bodily injury" or "property damage" arising out of, or related in any way, in whole or in part, either directly or indirectly, whether known or unknown:

   **a.** which first occurred prior to the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier); or

   **b.** which is, or is alleged to be, in the process of occurring as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

**2.** "Bodily injury" or "property damage" arising out of, or related in any way, in whole or in part, either directly or indirectly, whether known or unknown, which is in the process of settlement adjustment or "suit" as of the inception date of this policy (or the retroactive date of this policy, if any, whichever is earlier).

**All Other Terms and Conditions Remain Unchanged.**

ESG 1001 (Ed. 09/13)

ESG 3077 (Ed. 11/16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – PROFESSIONAL LIABILITY ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**

**A.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage A. Bodily Injury and Property Damage Liability, 2. Exclusions:**

**Professional Liability Errors and Omissions**

1. Any "bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services.

2. Any "bodily injury" or "property damage" arising out of:

   **a.** an error, omission, defect or deficiency in:

      **i.** any test performed; or

      **ii.** an evaluation, a consultation or advice given, by or on behalf of any insured;

   **b.** the reporting of or reliance upon any such test, evaluation, consultation or advice; or

   **c.** an error, omission, defect or deficiency in experimental data or the Insured's interpretation of that data.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in paragraph **1.** or **2.**

**B.** The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B. Personal and Advertising Injury Liability, 2. Exclusions:**

**Professional Liability Errors and Omissions**

1. Any "personal and advertising injury" arising out of the rendering of or failure to render any professional services.

2. Any "personal and advertising injury" arising out of:

   **a.** an error, omission, defect or deficiency in:

      **i.** any test performed; or

      **ii.** an evaluation, a consultation or advice given, by or on behalf of any insured;

   **b.** the reporting of or reliance upon any such test, evaluation, consultation or advice; or

**ESG 3077 (Ed. 11/16)**                                        (Page 1 of 2)

c.    an error, omission, defect or deficiency in experimental data or the Insured's interpretation of that data.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the offense which caused the "personal and advertising injury", involved that which is described in paragraph **1.** or **2.**

**C.**    The following is exclusion is added to **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM, SECTION I – COVERAGES, PRODUCTS/COMPLETED OPERATIONS, 2. Exclusions:**

**Professional Liability Errors and Omissions**

**1.**    Any "bodily injury" or "property damage" arising out of the rendering of or failure to render any professional services.

**2.**    Any "bodily injury" or "property damage" arising out of:

   **a.**    an error, omission, defect or deficiency in:

       **i.**    any test performed; or

       **ii.**    an evaluation, a consultation or advice given, by or on behalf of any insured;

   **b.**    the reporting of or reliance upon any such test, evaluation, consultation or advice; or

   **c.**    an error, omission, defect or deficiency in experimental data or the Insured's interpretation of that data.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that Insured, if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in paragraph **1.** or **2.**

**This endorsement does not change any other provision of the policy.**

**ESG 3077 (Ed. 11/16)**                    (Page 2 of 2)

CG 83 61
(Ed. 02 05)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SILICA OR RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM - COVERAGE
    FOR OPERATIONS OF DESIGNATED CONTRACTOR

**A.** The following exclusion is added to paragraph **2.**, **Exclusions**, of **SECTION I. Coverage A. Bodily Injury and Property Damage Liability**, of the **Commercial General Liability Coverage Form**, and to paragraph **2.**, **Exclusions**, of **SECTION I. COVERAGES**, of the **Owners and Contractors Protective Liability Coverage Form - Coverage for Operations of Designated Contractor**:

**2. Exclusions**

This insurance does not apply to:

**Silica or Related Dust**

**a.** Any "bodily injury" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, exposure to, or contact with, "silica" or dust that includes or contains "silica."

**b.** Any "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, threatened, or suspected contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

**c.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the

effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

**(i)** the circumstances of or leading to such actual, alleged, threatened, or suspected inhalation, ingestion, exposure, contact, existence, or presence; and

**(ii)** whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**B.** The following exclusion is added to paragraph **2.**, **Exclusions** of **SECTION I. Coverage B. Personal and Advertising Injury Liability** of the **Commercial General Liability Coverage Form**:

**2. Exclusions**

This insurance does not apply to:

**Silica or Related Dust**

**a.** Any "personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged, threatened, or suspected inhalation or ingestion of, contact with, exposure to, existence of, or presence of, "silica" or dust that includes or contains "silica."

CG 83 61 (Ed. 02/05) XS                    (Page 1 of 2)

**b.** Any loss, cost, or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, re-mediating or disposing of, or in any way responding to or assessing the effects of, "silica" or dust that includes or contains "silica," by any insured or by any other person or entity.

This exclusion applies regardless of:

(i) the circumstances of or leading to such actual, alleged, threat-ened, or suspected inhalation, in-gestion, exposure, contact, exis-tence, or presence; and

(ii) whether the "silica" or dust that includes or contains "silica," is mixed or combined with, or also includes or contains, any other substance.

**C.** The following definition is added to the **Definitions** Section:

**"Silica"** means silicon dioxide ($SiO_2$) in any form, from any source.

CG 83 61 (Ed. 02/05) XS                    (Page 2 of 2)

**CG 21 49**
(Ed. 09 99)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)** Any loss, cost or expense arising out of any:

**(a)** request, demand, order or statutory or regulatory requirement that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(b)** claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Copyright, Insurance Services Office, Inc., 1998

CG 21 49 (Ed. 09/99) XS

Great American E&S Insurance Company

ESG 1011 (Ed. 09/16)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION – UNMANNED AIRCRAFT PERSONAL AND ADVERTISING INJURY LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

A.  The following exclusion is added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION I – COVERAGES, Coverage B. Personal and Advertising Injury, 2. Exclusions:**

**Unmanned Aircraft Liability**

Any "personal and advertising injury" arising out of or related in any way to "unmanned aircraft" or "unmanned aircraft products"

B.  The following definitions are added to **COMMERCIAL GENERAL LIABILITY COVERAGE FORM, SECTION V – DEFINITIONS of the Occurrence Form** and **SECTION VI – DEFINITIONS of the Claims-Made Form:**

**"Unmanned aircraft"** means an aircraft that is not:

a.  designed;

b.  manufactured; or

c.  modified after manufacture;

to be controlled directly by a person from within or on the aircraft

**"Unmanned aircraft products"** means "unmanned aircraft," or any ground support or control equipment used in relation to "unmanned aircraft," including:

a.  any "unmanned aircraft" parts;

b.  any products installed in or on "unmanned aircraft;"

c.  any goods or products used in connection with an "unmanned aircraft;" and

d.  ground handling tools and equipment.

"Unmanned aircraft products" also includes any:

a.  tooling used in the manufacture of any such parts, goods, products, tools or equipment;

b.  representations or warranties made with respect to any such parts, goods, products, tools or equipment;

c.  training aids, instructions, manuals, blueprints, engineering and other data engineering reports for any such parts, goods, products, tools or equipment; and

ESG 1011 (Ed. 09/16)                                    (Page 1 of 2)

**d.** other advice, services, and labor relating to any such parts, goods, products, tools or equipment.

**This endorsement does not change any other provision of the policy.**

**ESG 1011 (Ed. 09/16)**                          (Page 2 of 2)

IL 72 10 (Ed. 01/15)

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**A. Rejection of Offer**

You have rejected the offer of terrorism coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act as an Act of Terrorism. An exclusion of terrorism losses has been made a part of this Policy.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in paragraph **C.** below) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion. **You have rejected this offer of coverage**.

**C. Federal Share of Losses Under the Terrorism Risk Insurance Act**

**85% Year: 2015**
**84% Year: 2016**
**83% Year: 2017**
**82% Year: 2018**
**81% Year: 2019**
**80% Year: 2020**

Includes copyrighted material of Insurance Services Office, Inc., with its permission

IL 72 10 (Ed. 01/15)

CG 21 75 (Ed. 01/15)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in US dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in

© Insurance Services Office, Inc., 2015

which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

**b.** The act resulted in damage:

**(1)** Within the United States (including its territories and possessions and Puerto Rico); or

**(2)** Outside of the United States in the case of:

**(a)** An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which

United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

**(b)** The premises of any United States mission; and

**(c)** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

Great American E&S Insurance Company

**PLEASE READ THIS CAREFULLY.**

**SURPLUS LINES NOTIFICATION**

**THIS INSURANCE CONTRACT IS ISSUED PURSUANT TO THE NEVADA INSURANCE LAWS BY AN INSURER NEITHER LICENSED BY OR UNDER THE SUPERVISION OF THE DEPARTMENT OF BUSINESS AND INDUSTRY OF THE STATE OF NEVADA. IF THE INSURER BECOMES INSOLVENT, A CLAIM UNDER THIS CONTRACT IS NOT COVERED BY THE NEVADA INSURANCE GUARANTY ASSOCIATION ACT.**

_____
**NAME OF BROKER OR AUTHORIZED REPRESENTATIVE**

NVSN (Ed. 05/08) XS

## POLICYHOLDER DISCLOSURE - OFFER OF TERRORISM COVERAGE

The Terrorism Risk Insurance Act establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals as part of an effort to coerce the government or population of the United States.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The federal share percentage is dependent upon the calendar year and is shown in the Table below.

| Year | Federal Share |
|------|---------------|
| 2015 | 85% |
| 2016 | 84% |
| 2017 | 83% |
| 2018 | 82% |
| 2019 | 81% |
| 2020 | 80% |

The Terrorism Risk Insurance Act, as amended in 2015, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

In accordance with the Terrorism Risk Insurance Act, we are required to offer you coverage for losses resulting from an act of terrorism that is certified under the federal program as an act of terrorism. The policy's other provisions will still apply to such an act.

See the section of this Notice titled **SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE.** If you choose to accept this offer of coverage, your premium will include the additional premium for terrorism as stated in this disclosure.

Failure to pay the premium by the due date will constitute rejection of the offer and your policy will be written to exclude the described coverage.

**SELECTION OR REJECTION OF TERRORISM INSURANCE COVERAGE**
Please note: regardless of your selection, a premium is due. The specific amount is included in the option you choose.

_____I hereby elect to purchase **Terrorism coverage** for acts of terrorism that are certified under the federal program as an act of terrorism for a premium of **$420.** I understand that if the quoted premium is not remitted within 30 days of the policy effective date, an exclusion of terrorism losses will be made a part of this policy.

X__ I hereby **reject the offer of terrorism coverage.** I understand that an exclusion of terrorism losses will be made part of this policy.

_____
~~Print Name~~

_____
Policyholder/Applicants Signature

_846841_____
Submission Number

_Real Water, Inc._____
Named Insured

_____
Date

846841
Page 3 of 3

Great American Insurance Company I American Empire Group I Mid-Continent Group I Republic Indemnity Group